Filed:  October 19, 2001

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 00-2297(L)
(CA-00-985-A, CA-00-990-A)

MicroStrategy, Incorporated,

                                        Plaintiff - Appellant,

        versus

Betty J. Lauricia,

                                        Defendant - Appellee.

O R D E R

    The court amends its opinion filed September 27, 2001, as follows:

    On page 3, second full paragraph, line 7 -- the spelling of Jonathan Klein's name is corrected.

                                For the Court - By Direction


                                /s/ Patricia S. Connor
                                        Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MICROSTRATEGY, INCORPORATED,
Plaintiff-Appellant,

v.

BETTY J. LAURICIA,
Defendant-Appellee,

and

CLAUDE DAVID CONVISSER; STACEY
A. SPOLTORE; JOHN DOE,
Defendants.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
Amicus Curiae.

BETTY J. LAURICIA,
Plaintiff-Appellee,

v.

MICROSTRATEGY, INCORPORATED,
Defendant-Appellant,

and

STACEY A. SPOLTORE; JOHN DOE,
Defendants.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
Amicus Curiae.

No. 00-2297

No. 00-2434

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis III, District Judge.
(CA-00-985-A, CA-00-990-A)

Argued: June 4, 2001

Decided: September 27, 2001

Before WIDENER, TRAXLER, and GREGORY, Circuit Judges.

_____

Vacated and remanded with instructions by published opinion. Judge Traxler wrote the opinion, in which Judge Widener and Judge Gregory joined.

_____

## COUNSEL

**ARGUED:** Daniel Meron, SIDLEY & AUSTIN, Washington, D.C., for Appellant. Claude David Convisser, LAW OFFICE OF CLAUDE D. CONVISSER, Alexandria, Virginia, for Appellee. John Foster Suhre, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Carter G. Phillips, Amanda L. Tyler, SIDLEY & AUSTIN, Washington, D.C., for Appellant. Gwendolyn Young Reams, Associate General Counsel, Philip B. Sklover, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, EQUAL EMPLOYMENT OPPORTU-NITY COMMISSION, Washington, D.C., for Amicus Curiae.

_____

## OPINION

TRAXLER, Circuit Judge:

Betty Lauricia brought an action against her employer, Micro-Strategy, Incorporated, alleging that MicroStrategy retaliated against her after she filed complaints with the Equal Employment Opportu-

2

nity Commission and the Department of Labor. MicroStrategy moved to dismiss the action, contending that the lawsuit was premature because the EEOC issued Lauricia a "right-to-sue" letter fewer than 180 days after Lauricia filed her EEOC complaint. MicroStrategy also sought to stay the action and compel Lauricia to submit her claims to arbitration. The district court denied both motions, and MicroStrategy appeals.[1] We vacate the district court's order and remand with instructions to compel arbitration.

I.

Lauricia was the head of MicroStrategy's Human Resources Department. During her employment, Lauricia signed a document entitled "Employee Acknowledgment Form and Agreement to Arbitrate" in which she acknowledged receipt of MicroStrategy's employee handbook. J.A. 63. The acknowledgment included a paragraph requiring Lauricia to arbitrate "[a]ny controversy or claim arising out of or relating to this Employee Handbook, procedures delineated in it, or the employment relationship otherwise cognizable at law and that could be the subject of legal action." J.A. 63.

On March 8, 2000, Lauricia filed a charge with the EEOC alleging age and sex discrimination. On March 10, Lauricia filed a complaint with the Department of Labor's Wage and Hour Division alleging that MicroStrategy was violating the Fair Labor Standards Act by failing to pay overtime. On March 13, Lauricia, through counsel, notified MicroStrategy of the filing of the charges. The next day, Lauricia met with Jonathan Klein, MicroStrategy's vice president and general counsel, at Klein's request. Although Lauricia alleges that Micro-Strategy knew about the charges at the time of this meeting, there apparently was no discussion of the charges at that time.

Later that day, MicroStrategy delivered to Lauricia a letter placing her on paid administrative leave "due to the conflict inherent to your

_____

[1] The district court's order refusing to compel arbitration is immediately appealable under 9 U.S.C.A. § 16(a)(1) (West 1999). The district court certified its right-to-sue ruling as appropriate for immediate appeal under 28 U.S.C.A. § 1292(b) (West 1993), and we granted Micro-Strategy permission to file an interlocutory appeal of that ruling.

3

continued active status . . . while pursuing discrimination and wage and hour claims against the Company." J.A. 330. The letter also stated that the company "view[ed] your conduct this afternoon, in engaging in discussions with counsel for the Company without informing them of the pendency of these claims, as a breach of your duty of loyalty to the Company," and reminded Lauricia that disclosure of any confidential information to anyone outside the company would be a breach of her "continuing obligations and duty of loyalty to the Company." J.A. 330. Lauricia remained on administrative leave until she was terminated on August 4, 2000.

On March 16, two days after it suspended Lauricia, MicroStrategy filed in federal district court an action against Lauricia and her attorney ("MicroStrategy I"). In that action MicroStrategy sought a declaration that it did not violate the Fair Labor Standards Act by placing Lauricia on paid leave and that terminating Lauricia would not violate the Act, and MicroStrategy alleged that Lauricia and her attorney should be held liable for stealing and disclosing trade secrets and other confidential information. The district court allowed MicroStrategy to depose Lauricia for the limited purpose of identifying documents and records in Lauricia's possession.

On April 24, the district court dismissed the action for lack of jurisdiction, concluding that there was no case or controversy because Lauricia had not filed suit against MicroStrategy. That same day, MicroStrategy appealed the decision to this court and sought emergency injunctive relief, which we denied. Before any briefs were filed, MicroStrategy moved to dismiss its appeal. The motion was granted, and the appeal was dismissed without prejudice.

On April 27, three days after the district court dismissed Micro-Strategy I, MicroStrategy filed an action in Virginia state court against Lauricia and her attorney ("MicroStrategy II"), which included the same state-law claims as alleged in the previous action. MicroStrategy obtained an "Order for Writ of Possession" requiring Lauricia and her attorney to turn over various documents that Micro-Strategy believed were confidential, and the sheriff seized the documents from Lauricia's attorney. Lauricia subsequently responded to a set of interrogatories and requests to produce submitted by Micro-Strategy. See J.A. 382-418.

4

On May 9, 2000, Lauricia filed a second charge with the EEOC (the charge giving rise to this action), alleging that MicroStrategy had retaliated against her by placing her on administrative leave after she filed the initial charges. On May 11, the EEOC sent a letter to the parties stating that it had reasonable cause to believe a violation had occurred and inviting the parties to participate in the conciliation process. On May 19, the EEOC sent MicroStrategy a letter about possible conciliation remedies and gave the company until May 31 to respond. Lauricia, however, informed the EEOC that she did not wish to participate in the conciliation process and she requested that she immediately be issued her right-to-sue letter. The EEOC issued the letter on May 25, 2000.

On June 15, after receiving from Lauricia a courtesy copy of the lawsuit she intended to file, MicroStrategy filed in federal district court a third action ("MicroStrategy III"; MicroStrategy I, MicroStrategy II, and MicroStrategy III are sometimes collectively referred to as the "prior actions"). In MicroStrategy III, MicroStrategy named Lauricia and her attorney as defendants, sought a declaration that its conduct did not and would not violate Title VII, the ADEA, or the Fair Labor Standards Act, and reasserted its state-law claims. Lauricia filed her action against MicroStrategy the next day.

In August 2000, the district court consolidated the actions filed by MicroStrategy and Lauricia. The court also dismissed the state-law claims asserted by MicroStrategy, which had the effect of dismissing Lauricia's attorney as a defendant. MicroStrategy thereafter subpoenaed Lauricia's employment records from her former employers.

MicroStrategy first sought to compel arbitration in its motion to dismiss filed on July 12, 2000. MicroStrategy also contended in that motion that the district court lacked jurisdiction because the right-to-sue letter issued by the EEOC was premature and thus invalid. The district court denied the motions. The court first concluded that by virtue of its "remarkably aggressive" course of litigation against Lauricia, MicroStrategy had waived its right to insist on arbitration. Lauricia v. MicroStrategy, Inc., 114 F. Supp. 2d 489, 492 (E.D. Va. 2000). The court next concluded that the EEOC properly issued the right-to-sue letter upon Lauricia's request even though the letter was

5

issued fewer than 180 days after Lauricia filed her charge. See id. at 496.

While we agree with the district court that MicroStrategy's litigation strategy against Lauricia was "remarkably aggressive," we conclude that Lauricia has failed to establish that MicroStrategy's litigation activities were sufficient to amount to a waiver of its right to insist on arbitration. Our resolution of the arbitration question makes it unnecessary for us to consider the validity of the right-to-sue notice.

II.

A.

Before considering the merits of the waiver question, we must first address Lauricia's claim that no binding agreement to arbitrate exists. According to Lauricia, the document containing the arbitration requirement is not binding because it was signed only by her, and not by the president of MicroStrategy.

The arbitration clause is found in the "Employee Acknowledgment Form and Agreement to Arbitrate," which Lauricia signed to acknowledge receipt of MicroStrategy's employee handbook. The portion of the acknowledgment requiring arbitration, however, does not include a requirement that the president of MicroStrategy sign the acknowledgment. That language appears only in the third paragraph of the acknowledgment, which states:

> I acknowledge that the policies and practices set out in this Handbook are not a contract of employment, and are not intended to imply a contractual relationship. I also agree that my employment is "at-will." I am free to terminate my employment at any time, with or without reason, and the Company has the right to terminate my employment at any time, with or without reason. The only person authorized to enter into employment agreements on behalf of the Company is the President, and any such contract shall be in writing. . ..

6

J.A. 63 (emphasis added). Lauricia argues that because the underlined language requires the president of MicroStrategy to sign all employment agreements, the agreement to arbitrate is not valid because it was not signed by MicroStrategy's president.

The problem with this argument, of course, is that the "Employee Acknowledgment Form and Agreement to Arbitrate" is not an employment agreement as contemplated by the above-quoted paragraph. That paragraph is an effort to emphasize the at-will nature of employment with MicroStrategy and to forestall claims by employees that, by virtue of certain handbook provisions or oral promises of employment for a definite term, they could only be discharged for cause. The paragraph makes clear that the only official authorized to enter into a contract for something other than at-will employment is the president and that such a contract must be in writing. Reading the language focused upon by Lauricia in context, it is apparent that the writing and signature requirement applies only to contracts for other-than-at-will employment. The "Employee Acknowledgment Form and Agreement to Arbitrate" itself is quite obviously not such a contract and thus need not be executed by the president of MicroStrategy to be enforceable. See generally O'Neil v. Hilton Head Hosp., 115 F.3d 272, 275 (4th Cir. 1997) (concluding that arbitration clause included in form signed by employee acknowledging receipt of employee handbook was valid and enforceable because "[a] mutual promise to arbitrate constitutes sufficient consideration for this arbitration agreement").

B.

Having concluded that the agreement to arbitrate is valid and binding, we now proceed to the question of whether MicroStrategy waived its right to insist on arbitration of Lauricia's discrimination claims. The district court concluded that MicroStrategy's actions caused Lauricia to suffer actual prejudice in that MicroStrategy was able to obtain discovery that was unavailable in arbitration. On appeal, MicroStrategy contends that most of the information it obtained could be obtained in arbitration and that Lauricia failed to carry her burden of establishing that she suffered sufficient prejudice to support a finding of waiver. We agree.

7

"Under the Federal Arbitration Act, a party may demand a stay of federal judicial proceedings pending exercise of a contractual right to have the subject matter of the federal action decided by arbitration, unless the party seeking arbitration is `in default' of that right." Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir. 1985); see 9 U.S.C.A. § 3 (West 1999). "Although this principle of `default' is akin to waiver, the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred." Maxum, 779 F.2d at 981; see also American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 95 (4th Cir. 1996) ("Because of the strong federal policy favoring arbitration, . . . we will not lightly infer the circumstances constituting waiver."). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

A party may waive its right to insist on arbitration if the party "so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." Maxum, 779 F.2d at 981. But even in cases where the party seeking arbitration has invoked the "litigation machinery" to some degree, "[t]he dispositive question is whether the party objecting to arbitration has suffered actual prejudice." Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc., 817 F.2d 250, 252 (4th Cir. 1987) (emphasis added). "Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration. However, delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice." Id. (citation omitted).

We review de novo a district court's conclusion that a party's conduct amounts to waiver of the right to arbitrate, although the court's factual determinations upon which the waiver finding was based are entitled to deference. See id. at 251-52 & n.2. The party opposing arbitration "bears the heavy burden of proving waiver." American Recovery, 96 F.3d at 95.

8

As noted above, delay in seeking arbitration is a factor to be considered when determining waiver. In this case, however, MicroStrategy's delay in seeking arbitration was relatively short. Although MicroStrategy filed three separate actions against Lauricia before seeking arbitration, it requested arbitration approximately one month after Lauricia filed her complaint, and the time between the filing of the first action and the arbitration request was less than six months. Nothing in the record suggests that this delay, in and of itself, caused Lauricia to suffer actual prejudice. See, e.g., Maxum, 779 F.2d at 982 ("[M]ere delay, without more, will not suffice to constitute waiver."); In re Mercury Constr. Co., 656 F.2d 933, 939 (4th Cir. 1981) (en banc) ("[I]t is only when . . . delay results in actual prejudice that it may amount to `default' within the [Federal Arbitration] Act."), aff'd sub nom. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983). Any delay by MicroStrategy in asserting its right to arbitration, therefore, is insufficient to support a finding of waiver.

Whether MicroStrategy waived its right to insist on arbitration by virtue of its litigation activities is a more difficult question. When concluding that Lauricia was prejudiced by MicroStrategy's litigation activities, the district court took into account all of MicroStrategy's activities in the prior actions. See Lauricia, 114 F. Supp. 2d at 492-93 n.8. Most of MicroStrategy's conduct in the prior actions, however, was in connection with its state-law claims which sought to prevent Lauricia from disclosing trade secrets or other confidential information. Because these claims are distinct, both factually and legally, from Lauricia's discrimination claims, the litigation surrounding these claims cannot support a finding that MicroStrategy waived its right to arbitrate the unrelated claims. See Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324, 328 (5th Cir. 1999) ("[A] party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate."); Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 133 (2d Cir. 1997) ("[O]nly prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate."). Although MicroStrategy's declaratory relief claims asserted in the prior actions involve the same legal and factual issues underlying Lauricia's claims against MicroStrategy, we cannot conclude, as did the district court, that the mere inclusion of these claims permits us to factor into the waiver analysis MicroStrategy's actions in connection with the distinct state-law

9

claims. As noted above, the bulk of the activity in the prior actions was directed toward the state-law claims, and no decision on the merits of the declaratory relief claims was ever made in any of the actions. Under these circumstances, we believe it was error for the district court to rely on the litigation of the trade secret claims to support its waiver finding.

To be sure, the litigation of the prior actions did involve many motions, responses, and other procedural maneuvers (more than 50, according to Lauricia), including a later-dismissed appeal by Micro-Strategy of the district court's dismissal of MicroStrategy I. And there is no doubt that the litigation involved the expenditure of substantial sums of money by all involved. In fact, because the state court in MicroStrategy II refused to dismiss Lauricia's attorney as a defendant, Lauricia was forced to hire another attorney to represent her in that action. But because the prior actions were primarily directed to claims unrelated to those asserted by Lauricia, the expense and effort associated with those claims cannot be used in support of the argument that MicroStrategy waived its right to arbitrate the discrimination claims. See Doctor's Assocs., 107 F.3d at 134 (concluding that legal expenses incurred in connection with litigation of unrelated claims did not amount to prejudice sufficient to support a waiver finding); cf. Rush v. Oppenheimer & Co., 779 F.2d 885, 889 (2d Cir. 1985) ("No waiver of the right to arbitrate can occur from conducting discovery on non-arbitrable claims." (alteration and internal quotation marks omitted)). Because neither the delay, nor the litigation surrounding the trade secrets claims, nor the expense associated with that litigation can support a finding of waiver, we are left with the district court's conclusion that Lauricia was prejudiced because the discovery obtained by MicroStrategy would not be available in an arbitration proceeding.

While we agree that MicroStrategy would not have been automatically entitled to discovery in an arbitration proceeding, it is incorrect to say that discovery is completely unavailable in an arbitration proceeding. Under the rules by which the parties agreed to arbitrate, the arbitrator may order such discovery as the arbitrator considers "necessary to a full and fair exploration of the issues in dispute." Brief of Appellant at 16. Because discovery is available, albeit under standards different from those governing discovery in federal court, the

10

relevant question is not whether MicroStrategy would have been entitled to such discovery in an arbitration proceeding, but whether MicroStrategy likely could have obtained the same information in an arbitration proceeding. If the same information could have been obtained in the arbitration proceeding, then Lauricia would have suffered no prejudice by providing the information prior to arbitration, thus precluding a finding of waiver. See Fraser, 817 F.2d at 252 ("The dispositive question is whether the party objecting to arbitration has suffered actual prejudice." (emphasis added)); see also Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 26 (2d Cir. 1995) (explaining that "[a]lthough [the defendant] did pursue various avenues of discovery [before seeking arbitration], it does not follow that [the plaintiff] was prejudiced"); Stifel, Nicolaus & Co. v. Freeman, 924 F.2d 157, 158-59 (8th Cir. 1991) (agreeing that brokerage firm "acted inconsistently with its right to arbitration by initiating litigation and participating in discovery on arbitrable claims," but reversing waiver determination because the parties opposing arbitration were not prejudiced); J&S Constr. Co. v. Travelers Indem. Co., 520 F.2d 809, 809-10 (1st Cir. 1975) (affirming district court's conclusion that the defendant did not waive its right to arbitration by answering complaint and participating in discovery because the plaintiff did not establish prejudice).

Lauricia, however, has made no effort to establish what discovery would or would not be available to MicroStrategy in an arbitration proceeding. Instead, Lauricia simply asserts that discovery is unavailable in arbitration and that she was therefore prejudiced by that fact that MicroStrategy obtained some discovery before seeking arbitration. In our view, such an approach is insufficient to establish waiver of the right to arbitrate. As noted above, the party opposing arbitration bears a "heavy burden of proving waiver." American Recovery, 96 F.3d at 95. And, as demonstrated by the Supreme Court's recent decision in Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79 (2000), that proof must be concrete, not merely speculative.

In Green Tree, the buyer of a mobile home sought to avoid the arbitration clause contained in the installment contract, arguing that she could not effectively vindicate her claims under the Truth in Lending Act because the arbitration agreement did not address how the costs of the arbitration proceeding would be allocated. The buyer

11

contended that "the arbitration agreement's silence with respect to costs and fees creates a `risk' that she will be required to bear prohibitive arbitration costs if she pursues her claims in an arbitral forum, and thereby forces her to forgo any claims she may have against petitioners." Id. at 90. The Supreme Court rejected this argument:

> It may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum. But the record does not show that [the buyer] will bear such costs if she goes to arbitration. Indeed, it contains hardly any information on the matter. . . . The "risk" that [the buyer] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.

Id. at 90-91. The Court believed that to invalidate an arbitration agreement on such a showing "would undermine the liberal federal policy favoring arbitration agreements . . . [and] would also conflict with our prior holdings that the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Id. at 91 (citation and internal quotation marks omitted)). The Court held that if "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Id. at 92. Because the buyer failed to carry that burden, the Supreme Court reversed the circuit court's conclusion that the arbitration agreement was unenforceable. See id.

Although Green Tree involved a question of the validity of an arbitration agreement rather than the waiver of the right to arbitrate, we believe that its approach is nonetheless applicable here. Lauricia offered nothing to show the likelihood of MicroStrategy obtaining similar discovery in an arbitration proceeding. That is, she offered no evidence generally showing how often discovery is permitted by arbitrators conducting proceedings under the rules to which she agreed or the extent of discovery that typically is permitted by such arbitrators. Thus, Lauricia's assertion that MicroStrategy would not have been able to obtain similar discovery in an arbitration proceeding is just as speculative as the buyer's claim in Green Tree that arbitration would be prohibitively expensive. And just as the Supreme Court in Green

12

Tree concluded that the buyer's speculative and unsubstantiated assertions were insufficient to carry the buyer's burden, we must likewise conclude that Lauricia's speculative and unsubstantiated claims about the unavailability of discovery is insufficient to carry her heavy burden of proving waiver.

To the extent that the district court based its waiver determination on a conclusion that Lauricia suffered actual prejudice simply by virtue of the difference in the standards governing the availability of discovery in arbitration and in federal court, the district court committed an error of law. To the extent the waiver determination rested on a factual conclusion that similar discovery would not be available to MicroStrategy in an arbitration proceeding, that conclusion is without evidentiary support. In either case, the error is one that we may correct on appeal. See, e.g., Mayhew v. Wells, 125 F.3d 216, 218 (4th Cir. 1997) (explaining that a district court's legal conclusions are reviewed de novo); Consolidation Coal Co. v. Local 1643, United Mine Workers of America, 48 F.3d 125, 128 (4th Cir. 1995) ("A [factual] finding is clearly erroneous if no evidence in the record supports it . . . .").

We recognize that even though the parties' arbitration agreement specifically prohibits "[t]he taking of depositions, except to perpetuate the testimony of unavailable witnesses," J.A. 63, MicroStrategy took Lauricia's deposition in MicroStrategy I. This fact, however, is insufficient to support the district court's waiver determination. In the prior actions, MicroStrategy contended that Lauricia was in possession of trade secrets and other confidential information, and MicroStrategy sought an injunction to prevent her from disclosing the protected information. The trial court in MicroStrategy I authorized Micro-Strategy to depose Lauricia for the limited purpose of identifying any protected documents in her possession. Thus, the deposition took place in conjunction with MicroStrategy's state-law claims, which, as discussed above, are legally and factually distinct from the discrimination claims it now seeks to arbitrate.[2] Under these circumstances,

_____

[2] Lauricia contends that she has a protected right to gather and turn over information necessary to support her claims of discrimination, thus suggesting that MicroStrategy's state-law claims are related to her dis-

13

the mere occurrence of the deposition cannot support a waiver finding, notwithstanding the arbitration agreement's general prohibition against the taking of depositions.[3] See Doctor's Assocs., 107 F.3d at 133 (concluding that prior litigation waives the right to arbitrate only "when a party has previously litigated the same claims it now seeks to arbitrate," and noting that "[f]inding waiver where a party has previously litigated an unrelated yet arbitrable dispute would effectively abrogate an arbitration clause once a party had litigated any issue relating to the underlying contract containing the arbitration clause"); cf. Rush, 779 F.2d at 889 ("No waiver of the right to arbitrate can occur from conducting discovery on non-arbitrable claims." (alteration and internal quotation marks omitted)).

Even if the deposition strayed from the limited subject matter authorized by the district court in MicroStrategy I, as Lauricia contends it did, that fact alone, without a showing of actual prejudice, is an insufficient basis upon which to ground a finding of waiver. During the deposition, MicroStrategy did not inquire about the substance of Lauricia's claims or her litigation strategy. While Lauricia identifies several areas of inquiry that she believes were outside the scope of the deposition, she offers no concrete argument as to how her responses to any improper inquiry prejudiced her ability to arbitrate

_____

crimination claims. We disagree. The consideration of such a privilege as a defense to MicroStrategy's state-law claims would not require an inquiry into the merits of Lauricia's discrimination claims. That is, even if MicroStrategy did not discriminate against Lauricia, she could still argue that any disclosure to the EEOC or other officials was protected. While such a defense may create a tangential connection between the discrimination claims and state-law claims, we believe that the connection is tenuous and that, at least for purposes of determining whether MicroStrategy waived its right to arbitrate, the claims remain legally and factually distinct. See Subway Equip. Leasing, 169 F.3d at 328 ("[A] party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate.").

[3] Lauricia also points out that the deposition lasted approximately four hours, which she believes supports her argument that she was prejudiced by the deposition. While four hours seems excessive given the limited scope of the deposition, the length of the deposition was primarily the result of the behavior of counsel for both parties.

14

her discrimination claims. This approach is insufficient to carry Lauricia's burden of establishing prejudice and waiver. Moreover, after reviewing the deposition, we cannot conclude that Lauricia was prejudiced by the minimal amount of information obtained by MicroStrategy that arguably was not relevant to the trade secret claims. See Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink & Brewery Workers Union Local 812, 242 F.3d 52, 57-58 (2d Cir. 2001) (holding that a union did not waive its right to arbitrate even though the union obtained "substantial discovery"); Tenneco Resins, Inc. v. Davy Int'l, AG, 770 F.2d 416, 421 (5th Cir. 1985) ("[W]hen only a minimal amount of discovery has been conducted, which may also be useful for the purpose of arbitration, the court should not ordinarily infer waiver based upon prejudice to the party opposing the motion to stay litigation . . . ."); Dickinson v. Heinold Sec., Inc., 661 F.2d 638, 642 (7th Cir. 1981) ("Admittedly, Heinold's discovery[on non-arbitrable claims] would be helpful to a presentation of the state law claims to the arbitrator but pursuit of such discovery is not sufficient to constitute a waiver in the instant case."). Because Lauricia has failed to establish that she suffered the kind of prejudice necessary to support a finding that MicroStrategy waived its right to insist on arbitration, the district court erred by denying MicroStrategy's motion to compel arbitration.

III.

In this case, MicroStrategy filed three separate actions against Lauricia and her attorney, during the course of which MicroStrategy deposed Lauricia, successfully sought the seizure of documents it believed contained trade secrets, received responses from Lauricia to interrogatories and requests to produce, and obtained Lauricia's employment records from her former employers. Only then did MicroStrategy assert its contractual right to arbitration of Lauricia's discrimination claims. Although Lauricia makes a strong argument that MicroStrategy undertook its "remarkably aggressive" course of litigation for the sole purpose of wearing her out, both emotionally and financially, we hold only that Lauricia failed to carry her "heavy burden" of establishing that she suffered legally significant prejudice from MicroStrategy's litigation activities. See Leadertex, 67 F.3d at 26 ("[H]owever unjustifiable [the] conduct [of the party seeking arbitration], there can be no waiver unless that conduct has resulted in

15

prejudice to the other party."). We express no opinion as to whether or not a similar level of litigation activity could, in another case, support a finding of waiver of the right to insist on arbitration. Accordingly, we reverse the district court's conclusion that MicroStrategy waived its right to arbitration. We remand with instructions for the district court to enter an order compelling arbitration and, if appropriate, staying other proceedings pending arbitration. **4**

VACATED AND REMANDED WITH INSTRUCTIONS
_____

**4** MicroStrategy suggests that if this court were to conclude that it improperly obtained information through discovery, then an order barring MicroStrategy from using that information in the arbitration proceedings would better honor the policy favoring arbitration than would a finding of waiver. While we conclude that Lauricia has failed to establish that MicroStrategy has waived its right to arbitrate, we do not address the appropriateness of MicroStrategy's use during arbitration of the information it obtained. That question, as well as the related question of whether Lauricia should be allowed to seek similar information from MicroStrategy, is better left to the arbitrator.

16