286 F.Supp.2d 1063 (2003)
Marla NEWSOM, Plaintiff,
v.
ANHEUSER-BUSCH COMPANIES, INC., and Day Zimmerman, Inc., d/b/a H.L. Yoh Company, Defendants.
No. 4:01-CV-1730 CAS.
United States District Court, E.D. Missouri, Eastern Division.
August 5, 2003.
*1064 *1065 *1066 Larry A. Bagsby, Esq., St. Charles, MO, for Plaintiff.
James N. Foster, Jr., Esq., Patricia M. McFall, Esq., St. Louis, MO, for Day & Zimmermann, Inc., d/b/a H.L. Yoh Company.
Gerard T. Carmody, Esq., Heidi M. Kuns, Esq., Bryan Cave LLP, St. Louis, MO, for Co-Defendant.

MEMORANDUM AND ORDER
SHAW, District Judge.
This employment discrimination case is before the Court on defendants' separate motions for summary judgment. For the reasons set forth below, the Court will grant the motion of defendant Day Zimmerman, Inc., d/b/a H.L. Yoh Company (Yoh), and deny the motion of Anhueser-Busch Companies, Inc. (ABC).
The record establishes that plaintiff Marla Newsom was hired by Yoh, a head-hunter, in November 2000 to work as a technical writer on a computer software project for ABC, one of Yoh's clients. In her second amended complaint Newsom claims that during the course of her employment at ABC's facility, she was subjected to a sexually hostile work environment by both coworkers and supervisory employees of ABC, in violation of Title VII of the Civil Rights Act of 1964 and the Missouri Human Rights Act (MHRA). She alleges that the situation continued after she made formal complaints about this to ABC management and that after she made such complaints, she was discharged by both defendants in retaliation for complaining, again in violation of Title VII and the MHRA. In her Consolidated Memo in opposition to both motions for summary judgment, Newsom clarifies that she is asserting a hostile work environment claim and a retaliation claim against ABC, but only a retaliation claim against Yoh. Memo at 1 n. 1.
Yoh argues that it is entitled to summary judgment on the retaliation claim because (1) Yoh did not take any adverse action against Newsom, and (2) Newsom executed an agreement to arbitrate any employment claims against Yoh. ABC argues that it is entitled to summary judgment because (1) it was not Newsom's employer, and (2) Newsom cannot established a prima facie case of sexual harassment or retaliation. In response, Newsom argues that Yoh waived its contractual right to seek arbitration by participating in this lawsuit for approximately fourteen months before seeking to enforce the arbitration agreement. She also argues that the evidence establishes at least a prima facie case of harassment by ABC and retaliation by both defendants.
With respect to defendant Yoh, it is undisputed that Newsom's employment agreement with Yoh contained an arbitration *1067 clause providing that "any dispute regarding employee's employment by the company, or the termination of employee's employment will be resolved through arbitration ... in accordance with the rules of the American Arbitration Association." Yoh's Exh. A.
The party opposing arbitration "bears a heavy burden of proving waiver." MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 250 (4th Cir.2001) (citation omitted). In Stifel, Nicolaus & Co. v. Freeman, 924 F.2d 157, 158-59 (8th Cir.1991), the Eighth Circuit reversed the district court's conclusion that the plaintiff had waived its right to arbitration, explaining that although the plaintiff "acted inconsistently with its right to arbitration by initiating litigation and participating in discovery on arbitrable claims," the parties opposing arbitration did not show that they were prejudiced. See also MicroStrategy, 268 F.3d at 251-52 (defendant employer's litigation activities in a Title VII case were insufficient to amount to waiver of its right to arbitrate where the plaintiff did not show prejudice); J & S Constr. Co. v. Travelers Indem. Co., 520 F.2d 809, 809-10 (1st Cir. 1975) (affirming district court's conclusion that the defendant did not waive its right to arbitration by answering complaint and participating in discovery where the plaintiff did not establish prejudice). Here, Newsom has not shown how she was prejudiced by Yoh's participation in this action before seeking enforcement of its right to arbitration, nor does the Court perceive any prejudice sufficient to defeat that right. Accordingly, Yoh's motion for summary judgment based on the arbitration agreement shall be granted.
ABC is entitled to summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. Meriwether v. Caraustar Packaging Co. 326 F.3d 990, 993 (8th Cir.2003). The moving party bears the burden of showing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
The Court first concludes that Newson was an employee of ABC for purposes of protection under Title VII. According to Newsom, after she submitted her resume to Yoh, she was told about a temporary position on a computer project with ABC. Newsom was living in Pennsylvania at the time. The supervisor of the project, Cheryl Thomas, called Newsom and interviewed her on the phone, telling her that the project was stated for six months, but might last nine months to a year. Thomas told Newsom ABC wanted her for the position and that she would speak with Yoh. Yoh then hired Newsom for the position with ABC.
Before beginning to work for ABC on November 20, 2000, Newsom signed a "Work Stoppage Agreement" with ABC, pursuant to which she consented to work under the direction and control of ABC, its supervisors and agents, until notified by ABC or one of her "other joint employers." of termination of the arrangement. She also signed a "Professional Services Agreement," which outlined the exclusive rights of ABC to all of Newsom's work product generated while working for ABC. Newsom's salary was paid directly by Yoh; Yoh also arranged for Newsom's tax payments *1068 and benefits, such as insurance and vacation and sick pay.
In determining whether a hired party is an employee for purposes of Title VII, courts consider:
"the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. No one of these factors is determinative."
Lerohl v. Friends of Minn. Sinfonia, 322 F.3d 486, 489 (8th Cir.2003) (quoting Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-752, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)).
A person may have two or more employers for the same work, for purposes of conferring standing to sue under Title VII. Hunt v. State of Mo., 297 F.3d 735, 742 (8th Cir.2002). The undisputed facts in the present case establish that Newsom was an employee under Title VII of both Yoh and ABC. See id. at 742-43 (nurses assigned by temporary staffing agency to provide services to Missouri prisons were employees of Missouri Department of Corrections as well as of agency where nurses did not work independently and were under supervision of the Department, even though they were directly paid by the agency).
An employee is subject to an actionable hostile work environment when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Meriwether, 326 F.3d at 993 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)); see also Duncan v. General Motors Corp., 300 F.3d 928 (8th Cir.2002). The determination of whether a hostile work environment exists must be made by looking at the totality of the circumstances. Harris, 510 U.S. at 21, 114 S.Ct. 367; Madison v. IBP, Inc., 257 F.3d 780, 793 (8th Cir.2001).
To establish a prima facie case of a hostile work environment, a plaintiff must show that: (1) she is a member of a protected group; (2) unwelcome harassment occurred; (3) there was a causal nexus between the harassment and her protected group status; (4) the harassment affected a term, condition, or privilege of her employment; and (5) the employer knew or should have known about the harassment and failed to take remedial action. Id.; Jacob-Mua v. Veneman, 289 F.3d 517, 520 (8th Cir.2002). An employer may be responsible for the consequences of sexual harassment if information about the harassment came to the attention of someone who "is reasonably believed to have a duty to pass on the information to someone within the company who has the power to do something about it." Sims v. Health Midwest Physician Servs. Corp. 196 F.3d 915, 919 (8th Cir.1999). A defending employer may raise an affirmative defense to liability or damages by showing that the employer exercised reasonable care to prevent and correct promptly harassing behavior, and (b) that the employee unreasonably failed to take advantage *1069 of any preventive or corrective opportunities provided by the employer. Faragher v. City of Boca Raton, 524 U.S. 775, 777-78, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).
Newsom's assignment at ABC required her to work in a computer lab for several hours each day interviewing two male computer packagers, Scott Butcher and Joe Thrasher. According to Newsom, Butcher and Thrasher did not like the presence of women in the lab and began treating Newsom and the other females in the lab with hostility, with the specific intent of forcing them out of the lab environment. Belcher and Thrasler would constantly belch and pass, and tell the others in the lab, both men and women, so "shut your hole" and "shut the fuck up."
According to Newsom, Butcher and Thrasher's tactics worked. The situation in the lab led Thomas to call a meeting in January 2001. Thomas, who was also assigned to work at ABC through an agency similar to Yoh, informed the lab workers that she spoke with her supervisor, Ms. Ronnie Bauman, an ABC employee, about the situation. Thomas told Butcher and Thrasher that they could no longer tell the women in the lab to "shut your hole," and all the females were moved to cubicles outside the lab. Newsom's job duties required her to he the lone female in the lab for three or four hours each day. A male was appointed to supervise Butcher and Thrasher because it was felt that a man could better control their offending behavior.
After the meeting, Butcher and Thrasher told Newsom that since they could no longer use the words, "shut your hole," they would use "shut your dick hole" or "shut the fuck up" when speaking to her. They began to daily call Newsom "Maria Mushroom," which they described as the "shit that does not flush down the toilet." Newsom was told to "shut your dick hole" on a daily basis, for a total of approximately 75 times. When returning from a weekend, Butcher and Thrasher would ask Newsom, if she "got laid" over the weekend. Additionally, Butcher and Thrasher began to tell sexual jokes in front of Newsom, approximately 30 times total; retrieve pornographic cartoons from the Internet and leave them in front of Newsom; and refer to Newsom and other females as "whores" and "cunts."
In February 2001, Thomas set up daily meetings with Newsom to determine how had the work environment was with Butcher and Thrasher. Newsom made repeated requests to Thomas to stop the behavior and Thomas's response was that she and Bauman were aware of the situation, but could not do anything to Butcher and Thrasher because they were too vital to completing the project by its July 2001 deadline.
In March 2001, an ABC corporate executive overheard Butcher and Thrasher tell Newson to "shut your dick hole," and this prompted an investigation by the manager of the facility. Butcher and Thrasher were terminated by ABC on March 21, 2001, because of their behavior to Newsom. On April 6, 2001, Bauman decided to let Newson go for the stated reason that her work was completed and no longer needed. According to Newsom, the project became bigger, more packagers were brought in, and she had substantial work to complete.
There is no bright line distinguishing a subjectively unpleasant work place from an actionable hostile environment. Upon review of the record, the Court concludes that the evidence, viewed in the light most favorable to Newsom, presents a jury question on whether plaintiff's work place was so severely sexually discriminatory as to alter the terms and conditions of her employment, and as to whether ABC acted *1070 with sufficient promptness to correct the situation.
The elements of a retaliation claim under Title VII are (1) protected activity by the employee, (2) a subsequent adverse employment action, and (3) a causal relationship between the two. Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir.1997). A violation of Title VII's retaliation provision can be found whether or not the challenged practice ultimately is found to be unlawful. See, e.g., Johnson v. University of Cincinnati, 215 F.3d 561, 579-80 (6th Cir.), cert. denied, 531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000). Upon review of the record, the Court concludes that plaintiff has presented a jury question on whether her termination from ABC in April 2001 was in retaliation for her complaining about Butcher and Thrasher's behavior.
The above analyses and conclusions of law also apply to Newsom's claims under the MHRA. See, e.g., Herrero v. St. Louis Univ. Hosp., 109 F.3d 481, 483 (8th Cir.1997).
Accordingly,
IT IS HEREBY ORDERED that defendant Day & Zimmerman, d/b/a/ H.L. Yoh Company's motion for summary judgment is GRANTED. [Doc. 28]
IT IS FURTHER ORDERED that defendant Anheuser-Busch Companies's motion for summary judgment is DENIED. [Doc.34]