**Michael E. MOZINGO, Plaintiff,**

v.

**The SOUTH FINANCIAL GROUP, INC., and its wholly-owned subsidiaries, Carolina First Bank, and Carolina First Securities; UVEST Financial Services Group, Inc.; Edward Hausgen; Rocco Quintana; Thomas Ryan; William Hann; Scott Plyler; and James Terry, Defendants.**

**C.A. No. 2:07–00279–PMD.**

United States District Court,
D. South Carolina,
Charleston Division.

June 6, 2007.

Anne E. Mjaatvedt, Terry Ann Rickson, Terry Ann Rickson Esquire Inc., Charleston, SC, for Plaintiff.

J. Theodore Gentry, Wallace K. Lightsey, Wyche Burgess Freeman and Parham, Greenville, SC, Cory E. Manning, Pamela J. Roberts, Nelson Mullins Riley and Scarborough, Columbia, SC, for Defendants.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court upon Michael E. Mozingo's ("Plaintiff" or "Mozingo") Motion to Refer Case to Arbitration and Stay Litigation. For the reasons set forth herein, the court denies Plaintiff's motion.

## BACKGROUND

Defendants Carolina First and UVEST hired Mozingo as a senior financial advisor on October 1, 2004. He was hired subject to a "Dual Employment Agreement," which all parties executed. The Agreement contains a provision on arbitration, which states,

> Section 11. Arbitration. In the event of any controversy between Employee and the Employer arising out of the employment relationship, including such matters as compensation, termination, all statutory discrimination claims (e.g., age, race, gender, sexual harassment, national origin, religion, and disability), or ERISA, both parties agree such matter shall be determined exclusively by arbitration before the National Association of Securities Dealers (NASD) in accordance with the NASD rules then in effect. Employee understands and ac-

knowledges that consent to this provision constitutes a waiver of certain rights, including the right to a jury trial, which might otherwise be available in the absence of an arbitration agreement. (Pl.'s Mem. in Supp. of Mot. to Refer Ex. A.)

In late 2005, Plaintiff's supervisor, Rocco Quintana ("Quintana"), directed him to transfer a customer's existing account from Bank of America to Carolina First, and the transfer was to occur under Plaintiff's brokerage number. Plaintiff opened the necessary account at Carolina First but did not complete the transfer immediately. Before Plaintiff completed the transfer, his supervisor told him that the customer, Elsie Coyne ("Coyne"), had died. Later, in early 2006, Quintana directed Plaintiff to give the paperwork to another employee, Edward Hausgen ("Hausgen"). Plaintiff subsequently discovered the transfer had taken place under his broker number. On examining the transfer documents, Plaintiff found a form allegedly signed by Coyne on March 23, 2006 (even though she died several months before this date) and by Hausgen on March 27, 2006. The account was not set up as an estate account, and it did not note Coyne's death. Furthermore, the "ID Type" section on this transfer form indicated that Government identification of Coyne had been checked, but Coyne died four months before the form was signed.[1]

Concerned the signature was a forgery and that an employee fraudulently affirmed an identity check, Plaintiff reported his concerns to Arthur Swanson ("Swanson"), Executive Vice President of Car-olina First Bank in Charleston, on April 10, 2006. Plaintiff and Swanson then reported the matter to William Hann, Senior Vice–President of Carolina First, and to Scott Plyler, Regional Executive Vice–President for the South Coast region of Carolina First Bank. On April 11, 2006, at Swanson's direction, Plaintiff reported his concerns via facsimile to James Terry ("Terry"), President of Carolina First Bank.

Within a few hours of faxing Terry, Plaintiff received a phone call from Thomas Ryan, Quintana's supervisor. Plaintiff also received numerous phone messages from Quintana and Hausgen. Plaintiff alleges that both Quintana and Hausgen accused Plaintiff of being insubordinate and told Plaintiff his actions were inappropriate. Plaintiff alleges that during a phone conversation, Quintana stated to Plaintiff, "You realize you have screwed your ass forever." Plaintiff further alleges that Quintana "told him to report to his office that afternoon. Quintana implied, and Mozingo knew, that he was going to be fired." (Compl. ¶ 38.)

Mozingo alleges that he was "constructively discharged on April 11, 2006, when, believing he was going to be fired for reporting potential fraud, Mozingo walked past Hausgen, and handed his resignation to Quintana." (Compl. ¶ 43.) Plaintiff asserts that he preempted his termination and submitted his resignation in order to protect his broker's status and his career. (Pl.'s Mem. in Supp. of Mot. to Refer at 2.) In his Complaint, Plaintiff explains he was concerned Quintana "would designate

---

1. An investigation revealed that Coyne's daughter, Patricia Anderson, signed Coyne's name to the form. Anderson was Coyne's attorney in fact pursuant to a power of attorney, and Coyne named Anderson as her personal representative. The United States Department of Labor's findings on Mozingo's complaint indicated that "[i]n March of 2006, the client's daughter signed the client's name completing the account transfer and the transfer appeared to be in accordance with the client's wishes." (Defs.' Resp. in Opp'n to Mot. to Refer Ex. B at 2.)

the termination as involuntary, on the grounds of insubordination, on Mozingo's Form U5, *Uniform Termination Notice for Securities Industry Registration.* The Form U5 is required for brokers to conduct securities transactions for commission, and listing a termination as involuntary for insubordination would make it difficult, or impossible for Mozingo to obtain further employment as a broker." (Compl.¶ 39.)

On July 7, 2006, Plaintiff filed a complaint with the United States Department of Labor, Occupational Safety and Health Administration, pursuant to the employee protection provisions of Title VIII of the Sarbanes–Oxley Act of 2002, alleging that he was "constructively discharged in reprisal for voicing concerns regarding the alleged illegal transfer of some financial accounts." (Defs.' Resp. in Opp'n to Mot. to Refer Ex. B at 1.) In a letter dated September 22, 2006, the Department of Labor's Occupational Safety and Health Administration ("OSHA") dismissed Plaintiff's case: "Since no credible evidence or testimony was found to support [Mozingo's] contention that he had no choice but to resign, he was not constructively discharged and the case is dismissed." (Defs.' Resp. in Opp'n to Mot. to Refer Ex. B at 3.)

After OSHA dismissed Plaintiff's case, Plaintiff filed an appeal with an administrative law judge ("ALJ"). On December 6, 2006, the ALJ granted summary judgment in favor of Defendants, finding Plaintiff "cannot make a showing sufficient to establish two essential elements of his claim": (1) that Plaintiff engaged in protected activity or conduct and (2) that Plaintiff suffered unfavorable personnel action. (*See* Defs.' Resp. in Opp'n to Mot. to Refer Ex. D.) Plaintiff then filed a

petition for review with the administrative review board ("ARB"), and Defendants filed a brief in opposition to Plaintiff's petition. (*See* Defs.' Resp. in Opp'n to Mot. to Refer Ex. E.) However, before the ARB ruled on Plaintiff's petition, Defendants assert that Plaintiff "abandoned his ARB appeal, and continued his pursuit of the statutory remedial process by filing a complaint in [district court]-with no indication Plaintiff did not intend to pursue that complaint." (Defs.' Resp. in Opp'n to Mot. to Refer at 3.) Defendants responded to Plaintiff's federal complaint, filing a motion to dismiss for failure to state a claim and for lack of jurisdiction. On March 15, 2007, Plaintiff filed the instant Motion to Refer Case to Arbitration and Stay Litigation. According to Defendants, "[o]nly upon receiving Defendants' motion to dismiss did Plaintiff seek for the first time to step away from the statutory process." (Defs.' Resp. in Opp'n to Mot. to Refer at 3.)

## DISCUSSION

In his motion, Plaintiff argues the court should stay the litigation and refer the case to arbitration because (1) Plaintiff's Sarbanes–Oxley claim is subject to arbitration,[2] and (2) the mere fact that Plaintiff filed action in federal court does not imply he waived his right to arbitrate the Sarbanes–Oxley claim. (*See* Pl.'s Mem. in Supp. of Mot. to Refer.) Defendants oppose Plaintiff's motion, arguing that Plaintiff has waived arbitration of his whistleblower claim. (*See* Defs.' Resp. in Opp'n to Mot. to Refer.)

A portion of the Federal Arbitration Act ("FAA") provides,

If any suit or proceeding be brought in any of the courts of the United States

---

**2.** The parties do not dispute that Plaintiff's claim is subject to arbitration. Rather, De-

fendants argue Plaintiff waived his right to arbitrate this claim.

upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

 Because federal policy favors arbitration, " 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself *or an allegation of waiver, delay, or a like defense to arbitrability.*' " *Patten Grading & Paving, Inc. v. Skanska U.S.A. Bldg. Inc.,* 380 F.3d 200, 204 (4th Cir.2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (emphasis in *Patten Grading)).* However, a default or waiver can arise "when the party seeking arbitration 'so substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.' " *Patten Grading,* 380 F.3d at 204 (quoting *Maxum Founds., Inc. v. Salus Corp.,* 779 F.2d 974, 981 (4th Cir. 1985)). "Although this principle of 'default' is akin to waiver, the limited circumstances giving rise to statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred." *Maxum Founds.,* 779 F.2d at 981. In fact,

> even in cases where the party seeking arbitration has invoked the litigation machinery to some degree, the dispositive question is whether the party objecting to arbitration has suffered *actual prejudice.* Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration. However, delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice.

*MicroStrategy, Inc. v. Lauricia,* 268 F.3d 244, 249 (4th Cir.2001) (internal quotation marks and citations omitted). "The party opposing arbitration on the basis of waiver thus bears a 'heavy burden.' " *Patten Grading,* 380 F.3d at 204 (quoting *MicroStrategy,* 268 F.3d at 251).

The Fourth Circuit's opinion in *MicroStrategy* illustrates the "heavy burden" a party bears in opposing arbitration on the basis of waiver. In that case, the Fourth Circuit held the plaintiff failed to carry this heavy burden because she did not establish sufficient prejudice from MicroStrategy's litigation activities. *MicroStrategy,* 268 F.3d at 254. MicroStrategy filed three separate actions against Lauricia before seeking arbitration, and it requested arbitration approximately one month after Lauricia filed her complaint against MicroStrategy. *Id.* at 250. Lauricia argued MicroStrategy had waived its right to arbitration because it delayed seeking arbitration and had engaged in litigation activities. *Id.* The Fourth Circuit stated the delay was insufficient to support a finding of a waiver because MicroStrategy sought arbitration one month after Lauricia filed suit, and the time between the filing of MicroStrategy's first complaint and when it requested arbitration was six months. *Id.* "Nothing in the record suggests that this delay, in and of itself, caused Lauricia to suffer actual prejudice." *Id.*

The question of "[w]hether MicroStrategy waived its right to insist on arbitration by virtue of its litigation activities[, however, was] a more difficult question." *Id.*

The court stated that most of MicroStrategy's conduct in the actions it filed was in connection with its state-law claims seeking to prevent Lauricia from disclosing trade secrets and confidential information; these claims "are distinct, both factually and legally, from Lauricia's discrimination claims." *Id.* Even the fact that MicroStrategy sought declaratory relief involving the same legal and factual issues as those involving Lauricia's claims against MicroStrategy did not convince the Fourth Circuit to find MicroStrategy waived its right to arbitration by its litigation activities; there was no decision on the merits of MicroStrategy's claim for declaratory relief, and the "bulk of the activity in the prior actions was directed toward the state-law claims." *Id.* With respect to prejudice caused by differences in discovery, the Fourth Circuit stated,

> To the extent that the district court based its waiver determination on a conclusion that Lauricia suffered actual prejudice simply by virtue of the difference in the standards governing the availability of discovery in arbitration and in federal court, the district court committed an error of law. To the extent the waiver determination rested on a factual determination that similar discovery would not be available to MicroStrategy in an arbitration proceeding, that conclusion is without evidentiary support.

*Id.* at 252. The Fourth Circuit thus vacated the district court's order denying MicroStrategy's motion to compel arbitration. *Id.* at 254–55.

The Fourth Circuit's 2004 opinion in *Patten Grading* also discusses waiver of the right to arbitrate. In *Patten Grading,* Patten filed a complaint against Skansa, alleging Skansa "breached their subcontract agreement by failing to pay Patten for grading work on a construction project

Skansa managed." *Patten Grading,* 380 F.3d at 202. When Skansa refused to pay Patten additional amounts Patten claimed were due, Patten filed suit in South Carolina state court on December 18, 2002. *Id.* at 203. Skansa removed the action to federal court and filed its answer a month later. *Id.* The parties then participated in written discovery, including interrogatories and requests for production of documents. *Id.* Although unsuccessful, the parties participated in court-ordered mediation in August 2003. *Id.* Then, on August 19, 2003, Skansa sought to stay proceedings and to compel arbitration. *Id.*

The district court denied Skansa's motion, finding its participation in the litigation constituted a waiver of its right to arbitrate. *Id.* Skansa appealed, and Patten made several arguments regarding why the district court should be affirmed. *Id.* One of Patten's arguments was the extent of the parties' pre-trial activities required a finding of waiver. *Id.* at 206. The Fourth Circuit stated,

> [T]he movant's participation in litigation activity alone will not suffice, as the dispositive question is whether the party objecting to arbitration has suffered *actual prejudice.*

> Patten notes that Skansa filed an answer containing affirmative defenses, engaged in discovery, and responded to motions. However, we have previously held that a party's filing of minimal responsive pleadings, such as an answer or compulsory counter-claim, are not necessarily inconsistent with an intent to pursue arbitration. Significantly, Patten offers no additional facts or assertions to demonstrate why the required pleadings filed by Skansa are distinguishable, and makes no showing of prejudice arising from this aspect of Skansa's pre-trial activity.

Likewise, we find no prejudice arising from the subsequent pre-trial activity. While the district court resolved three motions prior to Skansa's attempt to compel arbitration, none were filed by Skansa and none addressed the merits of any of Patten's claims. We are unwilling to include activity that the moving party did not initiate in assessing that party's default.

*Id.* (internal quotation marks and citations omitted).

▪ In the case *sub judice*, Defendants have satisfied the burden of establishing waiver of the right to arbitrate. The court "must ... look at whether the plaintiff[ ] waived [his] right to insist on arbitration by virtue of [his] litigation activities in the state court. This requires the Court to look at whether the plaintiff[']s litigation in state court centered around the defendants' arbitrable claims." *American Reliable Ins. Co. v. Stillwell*, 212 F.Supp.2d 621, 628 (N.D.W.Va.2002) (citations omitted). Plaintiff filed a complaint with the United States Department of Labor on July 7, 2006, which was dismissed on September 22, 2006. Plaintiff then filed an appeal with an ALJ, who granted summary judgment in favor of Defendants on December 6, 2006, finding Plaintiff "cannot make a showing sufficient to establish two essential elements of his claim": (1) that Plaintiff engaged in protected activity or conduct and (2) that Plaintiff suffered unfavorable personnel action. (*See* Defs.' Resp. in Opp'n to Mot. to Refer Ex. D.) The claim Plaintiff submitted to the Department of Labor and ALJ are the same claim Plaintiff raises in this lawsuit-all concern the employee protection provisions of Title VIII of the Sarbanes–Oxley Act of 2002. Because Plaintiff's litigation activities concern the same claim he now seeks to arbitrate, these activities "can be used in support of the argument that ...

[P]laintiff [has] waived [his] right to insist on arbitration." *Stillwell*, 212 F.Supp.2d at 628.

▪ As noted in *MicroStrategy*, "the dispositive question is whether the party objecting to arbitration has suffered *actual prejudice.*" *MicroStrategy*, 268 F.3d at 249. " 'Prejudice ... refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.' " *Stillwell*, 212 F.Supp.2d at 628 (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 134 (2d Cir. 1997)). Defendants explain the prejudice they would suffer if now forced to arbitrate:

> Plaintiff is in default of the arbitration agreement. (1) Plaintiff commenced this case in July 2006, but waited eight months to move to stay the statutory process. (2) During those eight months, the parties litigated in multiple forums the merits of the claim Plaintiff now seeks to arbitrate. (3) Plaintiff sought to stay his federal action only after Defendants filed a detailed motion to dismiss. (4) Plaintiff is obviously dissatisfied with the rulings below—OSHA and the ALJ squarely rejected the claims he now seeks to arbitrate. (5) Defendants have expended an enormous amount of time, and considerable money, opposing Plaintiff's claim to this point, having drafted and filed four merits briefs (not including this one) in four different forums.

(Defs.' Resp. in Opp'n to Mot. to Refer at 6.)

The court agrees with Defendants-submitting this case to arbitration at this point would prejudice Defendants. Plaintiff filed his complaint with the Department of Labor on July 7, 2006, and he filed the instant action on January 26, 2007.

Then, on March 15, 2007, Plaintiff moved to refer the case to arbitration. More than eight months passed between Plaintiff's filing of his complaint with the Department of Labor and seeking to compel arbitration. While this delay alone is not likely sufficient to support a finding of prejudice, this delay, coupled with the fact that both the Department of Labor and the ALJ dismissed Plaintiff's claim on the merits, supports a finding of prejudice. *See MicroStrategy*, 268 F.3d at 250 (citing *Distajo*, 107 F.3d at 133, for the proposition that "only prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate").[3] Plaintiff seeks a different forum after the Department of Labor and the ALJ did not rule in his favor. Moreover, as Defendants assert,

---

3. Plaintiff argues his Motion to Refer Case to Arbitration and Stay Litigation should be granted even though he filed a complaint with the Department of Labor and appealed to the ALJ. Plaintiff states, "In order to pursue relief under the Sarbanes–Oxley Act, Mozingo was required to exhaust these administrative procedures. Although the legislation has only recently been enacted, courts have interpreted it to require the employee to pursue his administrative remedies prior to seeking relief in a civil action." (Pl.'s Mem. in Supp. of Mot. to Refer at 6.) Defendants argue Plaintiff was not required to litigate before the Department of Labor before arbitrating his claim because (1) the plain language of the Sarbanes–Oxley Act contradicts Plaintiff's position, and (2) Plaintiff's position would lead to absurd results. (Defs. Resp. in Opp'n to Mot. to Refer at 7–9.)

The relevant portion of the Sarbanes–Oxley Act states,

**(b) Enforcement action.—**

**(1) In general.** A person who alleges discharge or other discrimination by any person in violation of subsection (a) may seek relief under subsection (c), by—

**(A)** filing a complaint with the Secretary of Labor; or

**(B)** if the Secretary has not issued a decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.

18 U.S.C. § 1514A. Plaintiff cites two cases for support: *Zhu v. Fed. Hous. Fin. Bd.*, 389 F.Supp.2d 1253 (D.Kan.2005), and *In re U.S. Airways, Inc.*, 2006 Bankr.LEXIS 1000 (Bankr.E.D.Va. Apr. 26, 2006). In *Zhu*, the court stated, "Before an employee can assert a cause of action in federal court under the Sarbanes–Oxley Act, he or she must file a complaint with the Occupational Safety and Health Administration ("OSHA") and afford OSHA the opportunity to resolve the allegations administratively." *Zhu*, 389 F.Supp.2d at 1271. Likewise, in *US Airways*, the court stated,

An employee who suffers retaliation or other discrimination under Sarbanes–Oxley may bring an action against the employer for reinstatement, back pay, and special damages. However, before an employee may file a complaint in federal court, he or she must file a complaint with the Secretary of Labor within ninety days after the violation occurs.

*US Airways*, 2006 Bankr.LEXIS 1000, at *29 (citations omitted).

As Defendants point out, these cases cited by Plaintiff do not speak to arbitration at all— these cases simply highlight that a plaintiff must file a complaint with OSHA before he or she can bring suit in federal court. Plaintiff's cause of action pursuant to Sarbanes–Oxley is arbitrable. *See Kimpson v. Fannie Mae Corp.*, No. 06–18(RWR), 2007 WL 1020799, at *3 (D.D.C. Mar. 31, 2007) (finding the plaintiff's Sarbanes–Oxley claim subject to arbitration "[g]iven the inclusive and comprehensive language of the [employment contract's dispute resolution] policy"); *see also Boss v. Salomon Smith Barney Inc.*, 263 F.Supp.2d 684, 685 (S.D.N.Y.2003) ("There is nothing in the text of the statute or the legislative history of the Sarbanes–Oxley act evincing intent to preempt arbitration of claims under the act. Nor is there an inherent conflict between arbitration and the statute's purposes. Accordingly, Boss's claims are arbitrable."). Nothing in the language of the statute or the cases cited by Plaintiff suggests that a plaintiff must file a complaint with OSHA before submitting such a claim to arbitration.

Plaintiff filed the instant motion only eight days after Defendants filed their Motion to Dismiss on the merits and for lack of jurisdiction. *See Karnette v. Wolpoff & Abramson, L.L.P.*, 444 F.Supp.2d 640, 648 (E.D.Va.2006) ("The Court agrees with plaintiffs that W & A obtained an unfair litigation advantage by forcing the plaintiffs to respond to the motion for summary judgment and then taking a different tack."). Thus, even though waiver is not to be lightly inferred, the circumstances of this case taken as a whole indicate Plaintiff has waived the right to arbitrate his claim. Plaintiff's Motion to Refer Case to Arbitration and Stay Litigation is therefore denied.

## CONCLUSION

It is therefore **ORDERED** for the foregoing reasons, that Plaintiff's Motion to Refer Case to Arbitration and Stay Litigation is **DENIED.**

**AND IT IS SO ORDERED.**