# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 03-1494 & 03-1495

RELIANCE INSURANCE CO.,

*Plaintiff,*

*v.*

RAYBESTOS PRODUCTS CO.,

*Defendant/Third-Party Plaintiff-Appellee,*

*v.*

UNITED STATES FIDELITY & GUARANTY CO.
and WESTCHESTER FIRE INSURANCE CO.,

*Third-Party Defendants-Appellants.*

_____

Appeals from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. IP 97-0027-C-Y/B—**Richard L. Young**, *Judge.*

_____

ARGUED SEPTEMBER 16, 2003—DECIDED AUGUST 27, 2004

_____

Before FLAUM, *Chief Judge*, and DIANE P. WOOD and
WILLIAMS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.*  Once again, we confront
a case in which parts of a complex situation are arguably

subject to arbitration, while other parts are not. The district court thought that the arbitration agreements at issue did not encompass one part of the dispute, and thus that judicial proceedings should proceed in parallel to the arbitral proceedings. In our view, however, this construes the agreement to arbitrate too narrowly. We therefore reverse and remand for entry of an order directing the controversy in question to be submitted to arbitration.

# I

Raybestos Products (an indirect subsidiary of Raytech Corporation) manufactures brakes at a plant in Crawfordsville, Indiana. Some time in late 1996 or early 1997, Raybestos learned that there was environmental pollution at the Crawfordsville facility, which was likely to entail substantial clean-up costs. Raybestos carried insurance against this risk from several different providers, including Reliance Insurance, United States Fidelity & Guaranty Company (USF&G), and Westchester Fire Insurance Company. Some of the plans were for different years, others were for excess coverage; some plans included arbitration clauses, others did not.

Initially, Raybestos submitted a claim only to Reliance for indemnification of these costs. In January 1997, invoking the diversity jurisdiction of the court, Reliance (an Illinois company with its principal place of business in Pennsylvania) filed this action against Raybestos (a Delaware corporation with its principal place of business in Indiana), seeking a declaration of noncoverage. Five years of litigation followed over a variety of aspects of that insurance contract. Throughout this time, presumably for strategic reasons, Raybestos was not actively pursuing payment from any of its other carriers. This turned out to be a bad choice when Reliance filed for bankruptcy and it became apparent that

it would be unable to pay the full amount of the clean-up costs (assuming that Raybestos prevailed on the merits).

At that point, Raybestos turned to the other three carriers, filing a third-party complaint against USF&G (a Maryland corporation with its principal place of business in Minnesota), Westchester (a New York corporation with its principal place of business in New York), and National Union (a Pennsylvania corporation with its principal place of business in New York).

There is some evidence that, despite the long delay, Raybestos had attempted to give USF&G notice of the claim back in February 1997; Westchester received no notice of the claim until the third-party complaint was filed. The question of the timeliness or adequacy of Raybestos's notices is not before us at this point, however, and thus we have nothing further to say about it. What is important is the fact that the third-party complaint alleged that USF&G and Westchester had failed to defend and indemnify Raybestos in breach of two specific USF&G policies and seven specific Westchester policies, identified by policy number and dates of coverage. These contracts each included the following arbitration clause:

> 6. ARBITRATION
>
> Should any dispute arise out of or related to this endorsement and contract of insurance which cannot be resolved in the normal course of business with respect to the validity or interpretation of this [sic] [which?] insurance contract, or the performance of the respective obligations of the parties to this insurance contract, then, upon written demands of either party to the contract, the matter or matters upon this agreement cannot be reached shall be settled by arbitration in accordance with the rules of the American Arbitration Association, or the Defense Research Institute arbitration program. The election as to which of these arbitration programs

will be used will be made by the party to this contract who did not make written demand for arbitration. If that party fails to make that election within twenty days, then the party making written demand for arbitration shall have the right to make that election. It is agreed that no award for punitive damages may be made in any arbitration proceeding regardless of the rules of the arbitration program selected.

Invoking that clause, USF&G and Westchester filed a motion in the district court seeking an order compelling arbitration. National Union notified Raybestos that it believed that it too had at least one contract containing an arbitration clause, but that none of its other contracts did. Raybestos then dismissed the part of the case against National Union that depended on the contract with the arbitration clause.

Pointing out that at least the remaining claims based on the National Union policies were inevitably going to remain before the district court, Raybestos opposed the motions to compel arbitration. It argued that it was unfair to force it to litigate and arbitrate essentially the same claims (though against different companies, and under different policies) at the same time. It points out, correctly, that inconsistent results are possible: the court might find that USF&G or Westchester must pay but not National Union, while the arbitrators might find the reverse. Relying exclusively on these policy-based concerns, the district court denied the USF&G/Westchester motion and refused to compel arbitration and to stay the litigation pending arbitration. The two insurance companies have appealed, as they are permitted to do under 9 U.S.C. § 16(a)(1)(A) and (B).

## II

Before turning to the district court's reasons for refusing to compel arbitration, we look first at the question whether the dispute between Raybestos and USF&G and Westchester

fall within the scope of the arbitration clause. If not, of course, then this would be an independent ground on which we might affirm the district court's result, particularly because our review of a decision refusing to compel arbitration is *de novo*, *Kresock v. Bankers Trust Co.*, 21 F.3d 176, 177-78 (7th Cir. 1994), except insofar as it rests on findings of fact, in which case we use the clearly erroneous standard, *Frynetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1027 (7th Cir. 2002).

The two insurance companies argue that even the question of arbitrability should be submitted to the arbitrators here, but we think this goes too far. The Supreme Court held in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), that arbitrability issues are normally for the court, unless there is "clear and unmistakable evidence" that the parties agreed to arbitrability. *Id.* at 944 (internal marks omitted). We find no such evidence here. Nonetheless, this is of little help to Raybestos, when one looks to the underlying issues. They include the following questions: (1) whether a notice from the Indiana Department of Environmental Management to enforce cleanup of the site is a "suit" for which the insurance company must provide a defense; (2) whether coverage exists for the circumstances leading up to the enforcement action; (3) when did the contamination occur; and (4) what was the triggering event for coverage under each policy. These questions surely "arise out of or [are] related to" the contracts of insurance.

Raybestos tries to avoid this result by suggesting that the arbitration provision applies only to the endorsement, and not to the insurance contract as a whole, but that is clearly not the case. The endorsements themselves state that they "form part of policy number ___." The arbitration clause itself, as a quick glance will show, says that it relates both to the endorsement and to the "contract of insurance." There is nothing in the language of the policy, the endorsements, or the arbitration clause, to support Raybestos's

restrictive reading. These disputes fall within the arbitration clauses unless something external pulls them back out.

The district court found, and Raybestos argues here, that there is such an external force: simple fairness. At its core, Raybestos's argument is that it is unfair to force it to litigate and to arbitrate the same legal and factual issues with different parties. The short answer to this is that the Federal Arbitration Act (FAA) makes no exception to the enforceability of arbitration clauses when this type of inefficiency exists. Duplicative actions are not entirely avoidable in a complex economy where multiple party dealings are the rule, not the exception, and disputes do not necessarily arise in a neat, bipolar fashion. Aspects of the same case often proceed simultaneously in state and in federal court, because the Supreme Court has cautioned that abstention should be the exception, not the rule, in these cases. See *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Ordinary tort litigation arising out of a single accident or defective product must often proceed in several state courts because of the lack of a single forum in which personal jurisdiction will be possible over every defendant. The situation Raybestos faces is no different.

Our conclusion is not in any tension with the one reached by the Fourth Circuit in the two cases on which Raybestos relies: *Schlumberger Indus., Inc. v. Nat'l Surety Corp.*, 36 F.3d 1274 (4th Cir. 1994); and *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435 (4th Cir. 1999). In *Schlumberger*, a variety of insurers filed a declaratory judgment action in federal court to determine their liability to the insured. At the same time, the insured had filed a similar action in state court against the various insurers. After some complicated maneuvers, both cases ended up consolidated in federal court. 36 F.3d at 1276-78. The insurers moved to remand the cases to state court on the ground that there was no diversity, but the district court refused and issued a merits ruling in their

favor. On appeal, the court of appeals on its own motion found that the district court had indeed lacked subject matter jurisdiction. *Id.* at 1284. It rejected the argument that this defect could be fixed by dismissing the non-diverse parties, because it found that those parties were indispensable under FED. R. CIV. P. 19(b). *Id.* at 1287-88. This situation is nothing like the one before us: it does not involve agreements to arbitrate, and it does involve the application of the indispensable party rule (which, contrary to Raybestos's position, is not among the reasons recognized by the FAA as grounds for refusing to enforce an arbitral agreement).

*Owens-Illinois* at least involved arbitration, but it is no nearer the mark than *Schlumberger.* In *Owens-Illinois,* the plaintiffs filed tort actions in state court. Owens-Illinois then filed a motion to compel arbitration in a separate federal court action and a motion to stay the proceedings in the state court. The district court concluded that it had no jurisdiction over the federal action, because there was a lack of complete diversity. It also held that it could not dismiss the non-diverse parties because they were (once again) indispensable under Rule 19(b). 186 F.3d at 438-39. The court of appeals agreed, commenting in passing that going forward in two fora created a potential for inconsistent results because the federal court might compel arbitration against some of the parties, while the state court might go forward with litigation. *Id.* at 441. We have only one court, which is deciding what to do with the arbitration clauses in question. There is no possibility that a state court will order arbitration between Raybestos and Westchester, for example, while the federal court refuses to do so. Neither of these cases, in short, establishes any principle that would allow Raybestos here to avoid the force of the arbitration clauses to which it agreed.

### III

We are not unsympathetic to the concerns that motivated the district court's decision. Busy courts do not welcome the idea of duplicative proceedings, whether before several different judicial bodies, or before some courts and some arbitral bodies. But, opposed to that concern is the right of parties to agree to alternative methods of dispute resolution, and the strong message from the Supreme Court that these agreements must be honored. If there is to be a duplicative proceeding exception, it is for Congress to add it to the FAA; it is not for us to create because one party may have put itself in a bad position. Because arbitration is a creature of agreement, parties often find ways to minimize the risk of inconsistent results through contractual provisions that either provide an exception to the duty to arbitrate for multi-party situations, or otherwise to find ways to coordinate duplicative proceedings.

In this case, however, Raybestos must live up to its bargain and arbitrate its claims against USF&G and Westchester. The order of the district court refusing to compel arbitration is REVERSED and the case is REMANDED to the court for entry of such an order.

A true Copy:

  Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*