# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-1615

CONTINENTAL CASUALTY COMPANY,
an Illinois insurance company,

*Plaintiff-Appellant,*

*v.*

AMERICAN NATIONAL INSURANCE
COMPANY, a Texas insurance company,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 02 C 6607—**Charles R. Norgle, Sr.**, *Judge.*

_____

ARGUED NOVEMBER 4, 2004—DECIDED AUGUST 5, 2005

_____

Before BAUER, RIPPLE and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Continental Casualty Co. ("Continental") filed suit against American National Insurance Co. ("ANICO"), a co-participant in the Associated Accident and Health Reinsurance Underwriters ("AAHRU") reinsurance pool managed by IOA Re, Inc. ("IOA Re"). Continental attempted to leave the reinsurance

arrangement in 2000. It sought a declaratory judgment that it owed no duty to indemnify ANICO pursuant to a Quota Share Personal Accident Retrocession Contract ("Quota Share Contract") executed in 2001 by ANICO and IOA Re. Continental maintained that IOA Re lacked the authority to enter into the contract on Continental's behalf. In response, ANICO moved for dismissal on the grounds, among others, that arbitration clauses in the Quota Share Contract between IOA Re and ANICO, and in the AAHRU Participation Agreement between IOA Re and Continental, required the parties to arbitrate.

The district court agreed with ANICO, holding that IOA Re had apparent authority as a matter of law to bind Continental to the Quota Share Contract and that the Participation Agreement's arbitration clause also compelled arbitration. Because the arbitration venue was not the Northern District of Illinois, the district court dismissed the action and Continental appeals. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

# BACKGROUND

## A. Facts

Continental and ANICO were major participants in the reinsurance pool, AAHRU.[1] As part of the participation

---

[1] "In essence, reinsurance is insurance for insurance companies." 1A Lee R. Russ et al., Couch on Insurance § 9.1 (3d ed. 1995). Under the typical reinsurance arrangement, a participant in the pool (the "reinsured") transfers ("cedes") its risk on the ceded

(continued...)

agreements covering each member's participation in the pool, the fund manager, IOA Re, was granted the authority to enter into reinsurance contracts on behalf of the members. On July 5, 2000, Continental notified IOA Re of its intent to terminate its participation in AAHRU at the end of 2000. It followed this communication with two more notices on July 21 and November 29. On August 22, 2000, Continental also revoked certain aspects of IOA Re's agency authority, including the authority to enter into multiple-year contracts on Continental's behalf and to back-date reinsurance policies. Continental did not notify any of the other three AAHRU members of its withdrawal. It notified only the pool manager IOA Re.

ANICO claims that in 2000 it sought to cede certain reinsurance business to AAHRU. This cession was reduced to writing in a Quota Share Contract. For reasons that are unexplained by ANICO and are not clear from the record, the formal Contract was not executed until April 20, 2001—after Continental's withdrawal from the pool. However, the Contract was back-dated and given an effective date of January 1, 2000. The ceded block of policies included risks covering the World Trade Center that were implicated by

---

[1] (...continued)

policies to another participant (the "reinsurer"). This arrangement allows the reinsured to spread its risk of loss. *See generally* 1A *id.* § 9.2.

In the year 2000, Continental's contribution constituted 48.8% ($20 million) of the total value of AAHRU. ANICO's contribution represented 42.5% ($17.4 million). Two other participants made up the remainder. In the decade of its participation, Continental's contribution to the AAHRU fund had increased from 5% to 48.8% as other participants left; ANICO's first year as a participant was 2000.

the terrorist attacks of September 11, 2001. Continental asserts that it learned of the Quota Share Contract when, in the wake of the attacks, ANICO asked for partial indemnification under the agreement.

Continental's participation is important to ANICO because, in 2000, Continental represented almost 50% of the total AAHRU participation. Without Continental, ANICO's indemnification from other insurers would be reduced significantly. ANICO claims that it would not have entered into the reinsurance contract with IOA Re if it had known that Continental would not be a participant in the reinsurance pool.

### B.  District Court Proceedings

Continental filed this action against ANICO, seeking a declaratory judgment that it was not bound by, and owed ANICO no duty under, the Quota Share Contract. ANICO then filed a motion to dismiss, contending that (1) the Quota Share Contract contained an arbitration clause, and arbitration was required under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.; (2) the venue was improper, *see* Fed. R. Civ. P. 12(b)(3); and (3) Continental had failed to join IOA Re, an indispensable party, *see id.* 12(b)(7).

ANICO grounded its arbitration argument in the arbitration clauses of two different agreements: the Quota Share Contract entered into by IOA Re and ANICO and the Participation Agreement between IOA Re and Continental establishing Continental's membership in AAHRU. The district court first determined, as a matter of law, that IOA Re had the apparent authority to bind Continental to the Quota Share Contract that IOA Re had signed with ANICO. Therefore, held the court, Continental was bound to arbitrate any disputes under the Quota Share Contract.

In the alternative, the court determined that the dispute over Continental's liability under the Quota Share Contract arose under the Participation Agreement. The court reasoned that, although ANICO was not a signatory to the Continental/IOA Re agreement, ANICO was a third-party beneficiary to the Participation Agreement and thus was entitled to invoke the Agreement's arbitration clause. As the district court viewed the matter, then, the dispute before it was subject to two arbitration clauses: the Quota Share Contract required arbitration and Continental's Participation Agreement's arbitration clause also covered "any dispute" arising from the arrangement. Accordingly, the district court held that "under either the Quota Share Contract or the Participation Agreement, a valid arbitration agreement exists; however, in either case, the forum for arbitration is not in the Northern District of Illinois." R.18 at 8. The court accordingly dismissed the action. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 328 (7th Cir. 1995); *Snyder v. Smith*, 736 F.2d 409, 420 (7th Cir. 1984), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

Continental then brought this appeal, seeking review of the two alternative holdings of the district court.

## II

## DISCUSSION

Before embarking on our analysis, we pause to set forth some basic governing principles. "Although the Federal Arbitration Act favors resolution of disputes through arbitration, its provisions are not to be construed so broadly as to include claims that were never intended for arbitration." *American United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 929 (7th Cir. 2003). Whether the parties have agreed to

arbitrate is a question normally answered by the court rather than by an arbitrator. The issue is governed by state law principles governing contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Reliance Ins. Co. v. Raybestos Prods. Co.*, 382 F.3d 676, 678-79 (7th Cir. 2004). Nevertheless, we must be mindful that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements" and "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Id.* at 24-25.

### A.

We begin our analysis by dealing with a threshold issue on which the parties have spent a great deal of time and energy in the course of this appeal. In this court the parties dispute the procedural posture in which this case comes to us. ANICO takes the view that the district court acted under Federal Rule of Civil Procedure 12(b)(1) and dismissed the case for want of jurisdiction. Continental contends, however, that the district court dismissed the case under Rule 12(b)(6) for failure to state a claim. The parties believe that this disagreement is important for two reasons. First, Continental submits that, if the motion was decided under Rule 12(b)(6), the district court erred by considering matters outside of the pleadings, specifically the Participation Agreement, without affording Continental Rule 56 proce-

dural protections. *See* Fed. R. Civ. P. 12(b).[2] Continental points out that the only Rule 12(b) ground with an evidentiary limitation is 12(b)(6); thus, Continental argues, the district court's taking the time to explain why it considered the Participation Agreement to be part of the pleadings indicates that it was proceeding under Rule 12(b)(6).[3]

---

[2] Rule 12(b) provides, in relevant part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b).

At oral argument, it became clear that Continental's interpretation of the district court's action as a Rule 12(b)(6) dismissal is grounded in the first footnote of the district court's order. There, the court stated its rationale for considering the arbitration clause in the Participation Agreement and cited a case construing Rule 12(b)(6):

> Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim. *See Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *see also* Federal Rule of Civil Procedure 10(c).

R.18 at 3 n.1.

[3] As the district court recognized, the bar on considering matters outside the pleadings is not absolute. Under Rule 10(c), "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." We have held that "this rule
(continued...)

Second, the parties believe that the procedural character-ization of the district court's action is important because it affects our standard of review or, more particularly, our presumptions in exercising that review. If ANICO is correct, and the district court dismissed the action under Rule 12(b)(1), we review the district court's legal conclusions de novo and its findings of fact, in particular, the court's finding that ANICO had apparent authority, for clear error. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc). If, as Continental urges, the motion to dismiss came under Rule 12(b)(6) or was an improperly converted Rule 56 motion, then we must review the district court's ruling de novo but draw all reasonable inferences in favor of the plaintiff. *See Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004); *Jet, Inc. v. Shell Oil Co.*, 381 F.3d 627, 629 (7th Cir. 2004).

There is some authority to support the view of each party. Some courts have taken the view that, if a district court determines that parties have agreed to arbitrate a dispute, the district court, at least temporarily, no longer has the

---

[3] (...continued)
includes a limited class of attachments to Rule 12(b)(6) motions" that are "central to [the plaintiff's] claim," especially when the court must interpret a contract to determine whether the plaintiff stated a claim. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). For reasons discussed below, the Participation Agreement is central to ANICO's claim. Thus, even if we accepted Continental's argument that the district court dismissed under Rule 12(b)(6), the court properly considered the Participation Agreement as part of the pleadings.

authority to resolve arbitrable claims. *See* 9 U.S.C. § 3.[4] Those courts consider that such a determination is jurisdictional and therefore, a Rule 12(b)(1) dismissal is appropriate.[5] Other courts characterize the action as the plaintiff's failure to state a claim cognizable in federal court, a Rule

---

[4]  Under 9 U.S.C. § 3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

[5]  ANICO points to a number of district court decisions from this circuit adopting the jurisdictional theory. *See, e.g., Jacobsen v. J.K. Pontiac GMC Truck, Inc.*, No. 01 C 4312, 2001 WL 1568817 (N.D. Ill. Dec. 10, 2001); *Johnson v. Universal Fin. Group, Inc.*, No. 02 C 1875, 2002 WL 1968388 (N.D. Ill. Aug. 22, 2002); *see also Harris v. United States*, 841 F.2d 1097, 1099 (Fed. Cir. 1988) (upholding district court dismissal under Rule 12(b)(1)); *Atkins v. Louisville & Nashville R.R. Co.*, 819 F.2d 644, 647 (6th Cir. 1987) (treating dismissal as under Rule 12(b)(1)). This view stems from *Evans v. Hudson Coal Co.*, 165 F.2d 970 (3d Cir. 1948), a case that analogized a motion to stay pending arbitration to an assertion that the district court lacked subject matter jurisdiction—a Rule 12(b)(1) assertion, *id.* at 972 ("[The district court] is thus, pending arbitration, deprived of jurisdiction of the subject matter."). It would appear, however, that the Third Circuit has rejected the jurisdictional approach of *Evans*. *See infra* note 6.

12(b)(6) dismissal.[6] Indeed, there is authority indicating that the dismissal is entirely separate from the Rule 12(b) rubric.[7]

We need not—indeed we cannot—choose between the competing characterizations offered by the parties. We think it is clear that, despite the mis-citation to a case decided under Rule 12(b)(6), the district court proceeded under Rule 12(b)(3)—improper venue—when it disposed of the case. This approach makes eminent sense both in terms of the actual substance of the district court's action and in terms of our precedent. The district court ultimately dismissed this

---

[6] Notably, the Third Circuit appears to have adopted this view in lieu of the earlier jurisdictional theory articulated in *Evans. See Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 272 (3d Cir. 2004); *Nationwide Ins. Co. of Columbus, Ohio v. Patterson*, 953 F.2d 44, 45 n.1 (3d Cir. 1991); *cf. Robinson v. Union Pac. R.R.*, 245 F.3d 1188, 1191 (10th Cir. 2001) (describing the parties' dispute about whether Rule 12(b)(1) or Rule 12(b)(6) applied and concluding that "[b]ecause we determine that the question of whether the Board exceeded the scope of its jurisdiction in interpreting the parties' collective bargaining agreement is both a jurisdictional issue and a substantive factual determination, and because the court relied on evidence outside the complaint, the motion was properly considered as one for summary judgment").

[7] We have noted that the proper course of action when a party seeks to invoke an arbitration clause is to *stay* the proceedings pending arbitration rather than to dismiss outright. *See Tice v. American Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002). The authority to stay proceedings does not derive from Rule 12(b), *cf.* Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) *to dismiss* for failure . . . to state a claim . . . ." (emphasis added)), but rather from the FAA, 9 U.S.C. § 3, *see* 5C Charles Alan Wright et al., Federal Practice and Procedure § 1360, at 87-89 (3d ed. 2004) (categorizing a motion to stay pending arbitration as "Not Enumerated in Rule 12(b)").

case because the forum selection clauses in the Quota Share Contract and in the Participation Agreement required arbitration in other districts. We have held dismissal under these circumstances to be appropriate, *see Merrill Lynch*, 49 F.3d at 328; *see also Mgmt. Recruiters Int'l, Inc. v. Bloor*, 129 F.3d 851, 854 (6th Cir. 1997), and, when the question has arisen, we have held that such dismissal properly is requested under Rule 12(b)(3), *see Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir. 1995). Under Rule 12(b)(3), the district court was not obligated to limit its consideration to the pleadings nor to convert the motion to one for summary judgment. The district court thus properly considered the Participation Agreement.

The central issue in this case is whether Continental agreed to arbitrate this dispute. Our review of that question is plenary. *See Continental Ins. Co. v. M/V Orsula*, 354 F.3d 603, 607 (7th Cir. 2003) ("Our review of the enforceability and applicability of a forum-selection clause, a contractual term used to select a specific venue, is de novo."); *Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 805 (7th Cir. 2003) ("We review *de novo* the court's decision to compel arbitration based on its finding that the parties entered into an enforceable agreement."). "[I]nsofar as [the district court's] decision rests on findings of fact, . . . we use the clearly erroneous standard." *Reliance Ins. Co.*, 382 F.3d at 678; *see Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) ("Upon holding an evidentiary hearing to resolve material disputed facts, the district court may weigh evidence, assess credibility, and make findings of fact that are dispositive on the Rule 12(b)(3) motion. These factual findings, when based upon an evidentiary hearing and findings on disputed material issues, will be entitled to deference.").

**B.**

We have determined that the district court properly considered the Participation Agreement. We now review the Participation Agreement to determine its proper role in resolving the situation before us. The first factor that must be noted is the comprehensiveness of this document. This agreement is central to the role of Continental in the reinsurance relationship. The Participation Agreement is the only agreement to which Continental is a party; it is the basis of any relationship among Continental, ANICO, AAHRU and IOA Re. It governs the basic duties and responsibilities of Continental as a member of the reinsurance pool, the role of the advisory committee of members in coordinating the activities of all the members, and the termination of a member from the arrangement. The Participation Agreement also is central to Continental's position in bringing this action for declaratory relief. The Participation Agreement demonstrates the interrelatedness and, indeed, interdependence of this agreement with the similar agreements of the other participants. Indeed, the Participation Agreement acknowledges this interdependence, *see* R.8, Ex.A, art.V, and Continental's complaint in this action specifically refers to the aggregate of these participation agreements as the basis for the relationship of its members. Finally, the arbitration clause in the Participation Agreement is broad. It governs "any dispute arising out of this Agreement." R.8, Ex.A, art.XIII.

Continental nevertheless submits that the Participation Agreement is irrelevant to the present dispute which, in its view, concerns only its obligations under the Quota Share Contract. Indeed, Continental points out that ANICO is not a party to the Participation Agreement between Continental and IOA Re and therefore cannot enforce its provisions. We cannot accept this perspective. As our earlier discussion

makes clear, the Participation Agreement is central to Continental's relationship to all other entities involved in this reinsurance arrangement. Any obligation of Continental in the Quota Share Contract transaction arose from its participation in AAHRU, the specifics of which are governed by the Participation Agreement. Although ANICO is not a party to Continental's Participation Agreement, it is clear that the Agreement was undertaken precisely to provide a framework to facilitate underwriting relationships between Continental and other carriers such as ANICO.

The same characteristics of the Participation Agreement make it clear that ANICO can indeed enforce the provisions at issue in this litigation. As a general matter in Illinois,[8] "[o]nly signatories to an arbitration agreement can file a motion to compel arbitration." *Bishop v. We Care Hair Dev. Corp.*, 738 N.E.2d 610, 619 (Ill. App. Ct. 2000). This principle is subject to certain "contract-based theories under which a nonsignatory may be bound to the arbitration agreements of others," including the third-party beneficiary doctrine.[9] *Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 539 (Ill. App. Ct. 2004).

---

[8] We note that the district court applied the law of the forum, Illinois; although both the Quota Share Contract and the Participation Agreement arguably have separate provisions choosing the law of Texas and Pennsylvania, respectively, the parties have not challenged the district court's decision to apply Illinois law. Thus we, too, shall apply the law of the state of Illinois. *See Sphere Drake Ins. Ltd. v. American Gen. Life Ins. Co.*, 376 F.3d 664, 671 (7th Cir. 2004); *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993) ("Where the parties have not identified a conflict between the two bodies of state law that might apply to their dispute, we will apply the law of the forum state . . . .").

[9] Other contract-based theories include agency or estoppel, neither of which are before this court.

"Illinois recognizes two types of third-party beneficiaries, intended and incidental. An intended beneficiary is intended by the parties to the contract to receive a benefit for the performance of the agreement and has rights and may sue under the contract; an incidental beneficiary has no rights and may not sue to enforce them." *Estate of Willis v. Kiferbaum Const. Corp.*, 830 N.E.2d 636, 2005 WL 1251340, at *5 (Ill. App. Ct. 2005). For an intended third-party beneficiary to enforce contract terms, the liability of a promisor to the beneficiary "'must affirmatively appear from the language of the instrument,'" *id.* (quoting *Carson Pirie Scott & Co. v. Parrett*, 178 N.E. 498 (1931)), and the contract must be made for the *direct* benefit of the third party, *Swavely v. Freeway Ford Truck Sales, Inc.*, 700 N.E.2d 181, 185 (Ill. App. Ct. 1998); *see also Cahill v. E. Benefit Sys., Inc.*, 603 N.E.2d 788, 791 (Ill. App. Ct. 1992). It is not necessary that the beneficiary be identified by name in the contract, but it must be identified in some manner, for example, by describing the class to which it belongs. *Holmes v. Fed. Ins. Co.*, 820 N.E.2d 526, 530 (Ill. App. Ct. 2004).

Despite Illinois' stringent requirements to demonstrate third-party beneficiary standing, we believe that ANICO may enforce terms of the Participation Agreement. ANICO is a beneficiary of the Participation Agreement as a pool participant. The Participation Agreement contemplates that Continental will participate to the extent of its agreed share in any reinsurance business accepted by IOA Re, *see* R.8, Ex.A, art.V § 2, including the block of reinsurance ceded by ANICO, if that business was ceded before Continental revoked IOA Re's agency. Thus, we agree with the district court that ANICO may enforce the Participation Agreement's arbitration provision as a third-party beneficiary of the Continental/IOA Re Agreement.

## C.

Given our discussion of the Participation Agreement, we have little difficulty in concluding that the district court properly determined that the issue of whether Continental has any liability for the risks involved in the Quota Share Contract is an issue for the arbitrator. The breadth of the language in the Participation Agreement makes clear that Continental's liability must be decided in that forum.

Continental's complaint asserted that IOA Re had no authority to enter into the Quota Share Contract on its behalf because Continental had withdrawn from AAHRU at the time that the block of reinsurance at issue was ceded. Resolution of whether Continental has any liability therefore will require a determination of when the block of reinsurance at issue was ceded. Concluding that this transaction took place prior to Continental's claimed withdrawal will require the antecedent conclusion that the arrangement among the parties, as memorialized in the various participation agreements, permitted the cession of such reinsurance in a form other than writing. If, however, the cession became effective after Continental's attempt to withdraw, there will be questions as to whether Continental had communicated effectively its withdrawal to its fellow members through its notification of IOA Re. This issue will require a determination of whether the contractual arrangement among the participating insurance companies permitted notification through IOA Re or whether it required more on the part of Continental. This issue also may require a determination of the nature of the fiduciary obligation under these interdependent participation agreements between IOA Re and each of the participating companies. The interpretation of this multi-dimensional contractual arrangement, and the significance of the parties' actions in relation to that arrange-

ment, are complicated questions for the arbitrator.[10]

### Conclusion

We conclude that the issues presented by the complaint are subject to arbitration under the Participation Agreement. Moreover, because the Federal Arbitration Act forbids the district court to compel arbitration outside the confines of the district, the court properly dismissed the action. The judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*

---

[10] We need not address the question of IOA Re's apparent authority, because we conclude that the Participation Agreement requires arbitration of this dispute.