In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1874

JON FAULKENBERG, BYRON LEMASTER,
and JF MARKETING, LLC,

*Plaintiffs-Appellants,*

*v.*

CB TAX FRANCHISE SYSTEMS, LP, COLBERT BALL
TAX SERVICE, INC., AL COLBERT, and JA JA BALL,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 08-cv-521—**William D. Stiehl**, *Judge.*

ARGUED NOVEMBER 9, 2009—DECIDED MARCH 29, 2011

Before EVANS and SYKES, *Circuit Judges*, and DER-YEGHIAYAN, *District Judge.**

* The Honorable Samuel Der-Yeghiayan, United States
District Judge for the Northern District of Illinois, sitting by
designation.

SYKES, *Circuit Judge.*    Jon Faulkenberg and Byron LeMaster, residents of Missouri, contracted with CB Tax Franchise Systems, LP, a company headquartered in Texas, to operate five tax-preparation franchises in and around St. Louis. The franchise agreement contained two clauses that are common in franchising and central to this case: an arbitration clause and a forum-selection clause. Under the arbitration provision, CB Tax franchisees must submit all disputes with the company to arbitration in Texas before filing suit. If arbitration is unsuccessful, the forum-selection clause permits franchisees to sue—but only in Texas. How then did this suit end up in Illinois?

According to Faulkenberg and LeMaster, one of their CB Tax franchises was located in Alton, Illinois, near the Illinois-Missouri border and adjacent to St. Louis. When their franchises failed, they sued CB Tax in state court in Madison County, Illinois, alleging common-law fraud and violations of the Illinois Franchise Disclosure Act of 1987, 815 ILL. COMP. STAT. 705/1 *et seq*. The Illinois Franchise Act voids all forum-selection clauses in franchise agreements, which helps explain the plaintiffs' forum-selection decision. *Id.* 705/4. Faulkenberg and LeMaster claimed they were fraudulently induced to purchase the CB Tax franchises and also that CB Tax failed to register the Alton franchise with Illinois regulatory authorities as required under the Act. CB Tax removed the suit to federal court and then moved to dismiss for improper venue based on both the forum-selection and arbitration clauses in the franchise agreement.

The district court granted the motion based on the forum-selection clause. The court first held that the Franchise Act did not apply because the parties had no connection to Illinois; because the Act did not apply, the forum-selection clause was enforceable and venue in Illinois was improper. The factual premise for the first of these rulings is mistaken. At the motion-to-dismiss stage, the court was required to accept the plaintiffs' allegation that one of the franchises they purchased was located in Alton, Illinois. Moreover, the uncontested evidence the parties submitted on the Rule 12(b)(3) motion bears this out as a matter of fact.

Still, the case was properly dismissed for improper venue. Although the Franchise Act voids forum-selection clauses in franchise agreements, it expressly permits out-of-state arbitration, 815 ILL. COMP. STAT. 705/4, and the parties' franchise agreement contained a broad arbitration clause requiring all disputes to be submitted to arbitration in Texas. A court may dismiss for improper venue based on either a forum-selection clause *or* an arbitration provision; both are properly asserted as objections to venue. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, strongly favors arbitration when the parties have agreed to it, as they clearly did here. We therefore affirm.

## I. Background

Faulkenberg and LeMaster became interested in operating a CB Tax franchise in September 2007. In response to their inquiry, CB Tax sent them a Uniform Franchise

Offering Circular and a copy of the CB Tax franchise agreement. The circular stated that all CB Tax franchises are governed by the standard franchise agreement; this document summarized the franchise agreement in plain language. Under a section entitled "Renewal, Termination, Transfer and Dispute Resolution," the circular says: "All claims are subject to arbitration in Houston, Texas," and "[a]ll proceedings shall be brought" in Texas. Faulkenberg signed a receipt acknowledging that he received the circular and the accompanying standard franchise agreement. The receipt instructs prospective franchisees to "[r]ead this offering circular and all agreements carefully," but Faulkenberg admits that he did not do so. He claims not to have noticed any reference to an arbitration provision or a forum-selection clause in the circular. His business partner LeMaster neither read nor signed the circular.

In late October 2007, Faulkenberg emailed CB Tax to request a reduction in the franchise fee. A CB Tax employee emailed back with a "revised annual fee agreement" reflecting a lower fee. The employee attached a sample CB Tax business plan to the email, telling Faulkenberg that it "will be a useful plan for your future CB franchises." The cover page of the business plan says, "[CB Tax] Business Plan, Union, New Jersey, Franchise Owner: Walter McDowell." The plan provided an overview of the tax-preparation industry and a how-to guide for the management and operation of a CB Tax franchise. The CB Tax employee also attached a promissory note to the email. On October 31, 2007, Faulkenberg

and LeMaster wired $15,000 to CB Tax as consideration for their purchase of five CB Tax franchises.

In November 2007 the parties executed the franchise agreement, although they dispute both the precise date and the manner of execution. CB Tax maintains that Faulkenberg and LeMaster signed the agreement in Texas on November 8, 2007. Faulkenberg and LeMaster contend they were not in Texas on that date. According to their version of events, they attended a franchise training session at CB Tax offices in Houston on November 17 and at that time signed several sheets of paper but were not given the entire franchise agreement.

The franchise agreement itself bears out CB Tax's contention. It is dated November 8, 2007, and signed by both Faulkenberg and LeMaster, as well as a representative of CB Tax. More specifically, on Page A-1 of the agreement, Faulkenberg and LeMaster filled in their names and the November 8, 2007 date. This page plainly states that by signing the agreement, the franchisees attest that they understood they were signing a legally binding franchise contract. Faulkenberg and LeMaster also filled in their names and the November 8 date on page A-32 of the agreement. That page states (among other things) that "[e]ach party affirms to the other that it has had the opportunity to consult and discuss the provisions of this Agreement (including the exhibits and attachments hereto)" with independent legal counsel. The signature page of the agreement is signed by both Faulkenberg and LeMaster and a representative of CB Tax. In addition, Faulkenberg and LeMaster signed

various exhibits to the franchise agreement, including a "Controlling Principals Guaranty," a "Certificate of Franchisee," and a "Release of Claims." These documents refer explicitly to the franchise agreement and the franchisees' rights and obligations under it.

The franchise agreement contains the following broad arbitration provision: "[A]ny claim, controversy or dispute arising out of or relating to the franchise, . . . including, but not limited to, any claim . . . concerning the entry into, the performance under or the termination of the agreement . . . shall . . . be referred to arbitration" in Houston, Texas. The forum-selection clause provides that any litigation "against any party to this Agreement arising out of this Agreement or the transactions contemplated thereby shall be brought in the United States District Court for the Southern District of Texas or in any court of appropriate jurisdiction in Harris County, Texas."

The parties dispute whether their agreement included a franchise to be located in Alton, Illinois. Faulkenberg and LeMaster submitted two emails suggesting that everyone understood that one of the five franchises under discussion would be in Alton. The first email specifically refers to an address in Alton: "2835 Homer Adams Pkwy, Alton, IL 62002." The second mentions the zip codes of the five proposed franchise locations and includes the zip code applicable to Alton. A reply from a representative of CB Tax indicates that these locations were "duly noted." In an affidavit, however, this employee said he assumed all of the locations were

in Missouri. Faulkenberg and LeMaster also claim that a representative of CB Tax personally inspected the Alton location and remarked that it was better than the other proposed locations in Missouri. CB Tax does not deny that this inspection took place. The record also contains a printout of a page on CB Tax's website indicating that a CB Tax franchise was located at "2823 Homer Adams Pkwy" in Alton, Illinois.

Less than six months after signing the franchise agreement, Faulkenberg and LeMaster closed all of their CB Tax outlets. They then filed suit against CB Tax in Madison County, Illinois, alleging violations of the Franchise Act for selling an Illinois franchise without proper registration and making fraudulent misrepresentations in connection with the sale of a franchise in Illinois. They also alleged common-law fraud. CB Tax removed the suit to federal court and then moved to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure.

CB Tax advanced two arguments in support of the motion. The first was that the forum-selection clause in the franchise agreement precluded suit in Illinois. The Franchise Act, if applicable, voids forum-selection clauses in franchise agreements, but CB Tax argued that the Act did not apply because the parties never agreed to locate a franchise in Illinois. The company's fallback argument was based on the arbitration clause, which requires that all disputes be submitted to arbitration in Houston. While the motion to dismiss was pending, CB Tax filed a motion to compel arbitration.

The district court granted the motion to dismiss based on the forum-selection clause and denied without prejudice the motion to compel arbitration. The court apparently rejected the plaintiffs' contention that the parties' agreement included a franchise located in Illinois. We say "apparently" because the judge did not address the point directly. The judge simply noted that the "plaintiffs do not contend that they are Illinois residents, nor that any part of this agreement was completed in Illinois," and as such the Franchise Act did not "override" the forum-selection clause in the franchise agreement. Faulkenberg and LeMaster appealed.

## II. Discussion

We review de novo the district court's order dismissing this case for improper venue, construing all facts and drawing reasonable inferences in favor of the plaintiffs. *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 677 (7th Cir. 2007). Section 4 of the Franchise Act voids "[a]ny provision in a franchise agreement that designates jurisdiction or venue in a forum outside of this State . . . ." 815 ILL. COMP. STAT. 705/4. The district court held that the Act was inapplicable because the parties had no connection to Illinois. This holding implicitly rejected the plaintiffs' contention that the franchise agreement included a franchise located in Illinois. This was wrong as a factual matter. At the motion-to-dismiss stage of the proceedings, the judge was required to accept the plaintiffs' version of events as true; this includes their allegation about a franchise located in Alton, Illinois.

The Franchise Act provides a statutory cause of action for fraud "[i]n connection with the offer or sale of any franchise made in this State." 815 ILL. COMP. STAT. 705/6. For purposes of section 6, a sale is "made in this State" when "the franchised business is or will be located in this State." *Id.* Faulkenberg and LeMaster alleged that they purchased the franchise rights to five CB Tax franchises, including one to be located in Alton, Illinois, and they submitted evidence substantiating this allegation in their response to the motion to dismiss. That evidence includes the two emails Faulkenberg sent to CB Tax expressly referring to the Illinois location, and the email response from a CB Tax employee acknowledging that the Illinois location, and the others in Missouri, had been "duly noted." CB Tax's own website listed a franchise in Alton on the same street as the location mentioned in Faulkenberg's email, albeit at a different address.

Faulkenberg and LeMaster also offered evidence that a CB Tax representative personally inspected the Alton location and found it to be the best of the five proposed sites. CB Tax does not deny that this inspection took place, but nonetheless maintains that it never knowingly authorized the franchise location in Illinois. However, the company now concedes the existence of a genuine factual dispute on this question. Accordingly, the case should not have been dismissed based on the forum-selection clause.

But the arbitration clause in the agreement provides an alternative basis for dismissal. Although section 4 of

the Franchise Act voids forum-selection clauses in franchise agreements, it specifically permits arbitration outside of Illinois: "Any provision in a franchise agreement that designates jurisdiction or venue in a forum outside of this State is void, *provided that a franchise agreement may provide for arbitration in a forum outside of this State.*" 815 ILL. COMP. STAT. 705/4 (emphasis added). If the parties agreed to arbitrate all disputes in Texas, then the case was correctly dismissed for improper venue based on the arbitration provision rather than the forum-selection clause.

Faulkenberg and LeMaster contend that we cannot reach the arbitration-clause issue because the district court did not address it. It is true as a general matter that we will not consider an argument not passed on below, but we may appropriately do so where, as here, the parties have briefed it and the resolution is clear. *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 523 (7th Cir. 2001). CB Tax's motion to dismiss for improper venue specifically included an argument based on the arbitration clause. In addition, CB Tax filed a motion to compel arbitration in the district court, and the plaintiffs filed a response. CB Tax devoted most of its appellate brief to the arbitration-clause argument, and Faulkenberg and LeMaster responded to the argument in their reply. The arbitration-clause issue has been fully briefed—both in the district court and here—and provides an independent basis on which to affirm. *See Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009) ("[W]e may affirm on any ground contained in the record.").

Faulkenberg and LeMaster suggest in the alternative that CB Tax waived its right to rely on the arbitration clause by filing a motion to dismiss for improper venue. This argument is clearly foreclosed by circuit precedent: "A party does not waive its right to arbitrate a dispute by filing a motion to dismiss or a motion to transfer venue." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008). Moreover, we have held that a motion to dismiss based on a contractual arbitration clause is appropriately "conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3)." *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007); *see also Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

The plaintiffs rely on a handful of out-of-circuit district-court decisions to support their waiver argument, but none of the cases they cite holds that filing a motion to dismiss for improper venue waives the right to arbitrate. All relate to waiver by other types of litigation conduct. *See, e.g., Mozingo v. S. Fin. Group, Inc.*, 520 F. Supp. 2d 725, 730-31 (D.S.C. 2007) (plaintiff waived right to compel arbitration by filing complaint with the Department of Labor and appealing to an administrative law judge, who granted summary judgment for defendants); *Karnette v. Wolpoff & Abramson, L.L.P.*, 444 F. Supp. 2d 640, 648 (E.D. Va. 2006) (defendant waived right to compel arbitration by filing a motion for summary judgment).

Before we proceed to the merits of the arbitration-clause issue, we have a few observations on the proce-

dural posture of the case. Both parties briefed the appeal as if we were reviewing a denial of a motion to compel arbitration under § 4 of the FAA. *See* 9 U.S.C. § 4 (setting forth procedures governing motions to compel arbitration). For example, CB Tax discussed at length the elements necessary to grant a motion to compel arbitration under § 4. Faulkenberg and LeMaster, for their part, demanded that we remand for a jury trial pursuant to § 4 of the FAA on the question whether they agreed to arbitrate. *See id.* (An aggrieved party may demand a jury trial to determine whether they entered into an agreement to arbitrate.). These references to § 4 of the FAA, however, are off the mark.

This is an appeal from an order of dismissal for improper venue. After granting CB Tax's motion to dismiss under Rule 12(b)(3), the district court simply denied, without prejudice, CB Tax's motion to compel arbitration. Accordingly, the court did not address the merits of the motion to compel arbitration, and CB Tax did not cross-appeal from the order denying this motion. This is just as well because under § 4 of the FAA, a district court cannot compel arbitration outside the confines of its district. *See Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009) ("[O]nly the district court in that forum can issue a § 4 order compelling arbitration. Otherwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless." (quotation marks omitted)). In this situation, we have held that a Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use

when the arbitration clause requires arbitration outside the confines of the district court's district. *Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606-07 (7th Cir. 2003).

The implications of this procedural posture are two-fold: First, we are not limited by the strictures of § 4 regarding a motion to compel arbitration; and second, Faulkenberg and LeMaster may not avail themselves of § 4's jury-trial mechanism.[2]

As a general matter, the FAA provides that an arbitration provision in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has explained that the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Notwithstanding this strong federal policy in favor of arbitration, the FAA's provisions are "not to be construed so broadly as to include claims that were never intended for arbitration." *Am. United Logistics, Inc. v. Catellus Dev.*

---

[2] In any event, a jury trial is only appropriate where there is a genuine dispute whether the parties agreed to arbitrate. *See Sat. Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1196 (7th Cir. 1987) (explaining that a party will receive a jury trial "only if there is a triable issue concerning the existence or scope of the agreement"). As we explain, *infra*, there is no genuine factual dispute on this issue.

*Corp.*, 319 F.3d 921, 929 (7th Cir. 2003)); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (explaining that arbitration "is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration"). Whether the parties have validly agreed to arbitrate is governed by state-law principles of contract formation. *Cont'l Cas.*, 417 F.3d at 730 (citing *Kaplan*, 514 U.S. at 944)).

As for which state's law applies to this question, we would normally respect the law chosen in the franchise agreement—here, that is Texas. *Hofeld v. Nationwide Life Ins. Co.*, 322 N.E.2d 454, 458 (1975) ("Generally, the law applicable to a contract is that which the parties intended, assuming such an intent. When that intent is expressed, it should be followed."). But neither side has mentioned Texas law, either in the district court or on appeal. Instead, the parties have cited Illinois caselaw and cases from our court applying Illinois law. Moreover, the parties have not identified, and we have not located, any differences between Texas and Illinois law regarding basic contract-formation principles; the use of one rather than the other would not produce a different result.[3] Nor have the parties asked us to apply any law

---

[3] As we explain, *infra*, the contract-formation question in this case turns on whether Faulkenberg and LeMaster can plead ignorance to a contract they have signed. The answer is "no" under either Illinois or Texas law. *Compare Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 108 (Ill. 2006) (noting "the usual maxim of contract law that a party to an agreement is
(continued...)

other than that of Illinois. In the absence of such a request, we apply Illinois law to the question whether the parties agreed to submit disputes to arbitration. *See S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667, 672 (7th Cir. 2002) (applying Illinois law "[b]ecause neither party contends that Illinois'[] choice of law rules require us to apply the substantive law of another state"). We make this decision notwithstanding the choice-of-law provision in the parties' own agreement. *See Cont'l Cas.*, 417 F.3d at 734 n.8 (applying Illinois law to issue of contract formation despite contract provisions choosing out-of-state laws).

In Illinois a party to a contract is charged with knowledge of and assent to a signed agreement. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 108 (Ill. 2006) (enforcing arbitration agreement under common-law contract principles). Faulkenberg and LeMaster had a duty before signing the franchise agreement to read and understand its contents. *Magnus v. Lutheran Gen. Health Care Sys.*, 601 N.E.2d 907, 915 (Ill. App. Ct. 1992). Ignorance of the contract's arbitration provision is no defense if they failed to read the contract before signing. *Breckenridge v. Cambridge Homes, Inc.*, 616 N.E.2d 615, 620 (Ill. App. Ct. 1993) ("A party who has had an opportunity to read a

---

[3] (...continued)
charged with knowledge of and assent to the agreement signed"), *with In re Bank of Am., N.A.*, 278 S.W.3d 342, 344 (Tex. 2009) ("We have always presumed that a party who signs a contract knows its contents." (quotation marks omitted)).

contract before signing, but signs before reading, cannot later plead lack of understanding.").

When ruling on a motion to dismiss for improper venue, the district court is not "obligated to limit its consideration to the pleadings [or to] convert the motion to one for summary judgment" if the parties submit evidence outside the pleadings. *Cont'l Cas.*, 417 F.3d at 733. It is appropriate, then, for us to consider the evidence submitted with the motion—in particular, the franchise agreement and the circular offering. This evidence—most of it undisputed—convincingly establishes that Faulkenberg and LeMaster agreed to submit any disputes with CB Tax to arbitration in Texas. First, Faulkenberg signed a receipt attesting that he had received the circular, which contained a plain-language summary of the franchise agreement. The cover sheet of the circular says that Texas law governs the agreement and suits must be brought in Texas. Item 17 of the circular, entitled "Renewal, Termination, Transfer, and Dispute Resolution," contains a discussion of "[d]ispute resolution by arbitration or mediation," and this section plainly states that "[a]ll claims are subject to arbitration in Houston, Texas."

Faulkenberg also acknowledged receiving a copy of the franchise agreement, which contains the arbitration provision setting forth in detail the requirements of arbitration in Texas. And despite their equivocation on the subject, there is no doubt that Faulkenberg and LeMaster signed the franchise agreement. Their signatures appear, with that of a CB Tax representative, on the signature page of the agreement. That page

states that "the parties hereto have duly executed and delivered this Agreement." They also signed numerous exhibits indicating they understood the franchise agreement and agreed to be bound by it. The parties acknowledged by their signatures on the "Controlling Principals Guaranty" that they "unconditionally, irrevocably and absolutely guarantee . . . the discharge . . . of [their] obligations pursuant to the Agreement." This document also contains an explicit acknowledgment by Faulkenberg and LeMaster that they read and understood the terms of the franchise agreement. As if more were needed, Faulkenberg and LeMaster also signed a "Certificate of Franchisee" certifying their compliance with the representations and warranties of the franchise agreement, as well as a "Release of Claims" reciting that they had "executed" the franchise agreement.

Despite this conclusive evidence, Faulkenberg and LeMaster insist that they didn't know they were signing a franchise agreement. They thought (or so they contend) they were signing a different agreement altogether— the "revised proposal" that CB Tax had emailed them the previous year. This "revised proposal," however, was nothing more than an email in which CB Tax agreed to reduce the franchise fee. The email attached a sample CB Tax "Business Plan" from a franchisee in New Jersey that CB Tax said would provide "a useful plan for [their] future CB franchises." The business plan itself is obviously not a franchise agreement; it simply describes in general terms the tax-preparation business. The email also contained a draft promissory note setting forth payment terms; the promissory note could not

have been mistaken for a franchise agreement. Moreover, the franchise agreement itself—which bears the plaintiffs' signatures—makes no reference to a "revised proposal," a "Business Plan," or a draft promissory note. In short, there is no factual support whatsoever for the plaintiffs' contention that they thought they were signing something other than a franchise agreement—an agreement that clearly contains a provision requiring all disputes to be submitted to arbitration in Texas.

Accordingly, this case was properly dismissed for improper venue based on the arbitration clause in the franchise agreement. Arbitration clauses containing language such as "arising out of" are "extremely broad" and "necessarily create a presumption of arbitrability." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999); *see also Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993). The CB Tax arbitration provision is comprehensive. It provides that "any claim, controversy or dispute arising out of or relating to this Agreement" will be submitted to mediation and arbitration in Texas. The plaintiffs' allegations that CB Tax misrepresented certain aspects of operating a tax franchise and failed to register the Alton franchise in Illinois easily fall under this broad provision.

The plaintiffs' claim that they were fraudulently induced into signing the franchise agreement does not save this case from dismissal. The only relevant inquiry at this stage is whether the arbitration clause *itself* was fraudulently induced—that is, whether there was fraud

that "goes to the 'making' of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *see also James v. McDonald's Corp.*, 417 F.3d 672, 680 (7th Cir. 2005) (holding under *Prima Paint* that a game-show contestant had to submit claim to arbitration because allegations of fraud related to the entire agreement and not "uniquely to the arbitration clause"). Faulkenberg and LeMaster have not alleged fraud relating solely to the arbitration clause. They allege instead that they were tricked into signing the franchise agreement and were otherwise misled during contract negotiations. This general allegation of fraud is not enough to avoid the arbitration clause. Stated differently, the plaintiffs cannot get out from under the arbitration clause simply by alleging the entire contract was a product of fraud. *See Sweet Dreams*, 1 F.3d at 642 n.4 ("[A] court may consider a claim that a contracting party was fraudulently induced to include an arbitration provision in the agreement but not claims that the entire contract was the product of fraud.").[4]

---

[4] Illinois courts interpreting claims under the Franchise Act in the context of the FAA have also rejected the franchisees' fraudulent-inducement argument:

> [T]he party later seeking to avoid arbitration should not be allowed to do so by merely *alleging* that no contract (and, implicitly, no arbitration agreement) exists. Indeed, [that result] could effectively end arbitration of contractual disputes in Illinois because almost any plaintiff can find some theory or claim upon which to *allege* that no contract existed, thereby avoiding arbitration.

(continued...)

Finally, the plaintiffs' contention that the arbitration provision is unconscionable is essentially a rehash of their fraudulent-inducement argument. Arbitration provisions are standard features in franchise agreements, and Faulkenberg and LeMaster have failed to articulate why *this* arbitration clause is unconscionable. Courts have routinely sent claims to arbitration on the basis of virtually identical contract language. *See, e.g., Prima Paint*, 388 U.S. at 406; *McDonald's Corp.*, 417 F.3d at 680; *Sweet Dreams*, 1 F.3d at 642-44. As we have explained, the plaintiffs' allegation that the contract was fraudulently induced is not enough to escape the arbitration provision; nor does it render the arbitration clause unconscionable. Indeed, the Franchise Act explicitly permits arbitration outside of Illinois, 815 ILL. COMP. STAT. 705/4, and this is further indication that arbitration clauses requiring out-of-state arbitration are not unconscionable.

Accordingly, although the district court improperly relied on the forum-selection clause, dismissal was appropriate based on the arbitration clause in the franchise agreement. We AFFIRM the court's order dismissing the case for improper venue pursuant to Rule 12(b)(3).

---

[4] (...continued)
*Cusamano v. Norrell Health Care, Inc.*, 607 N.E.2d 246, 250-51 (Ill. App. Ct. 1993) (citation omitted) (cited with approval by *Jensen v. Quik Int'l*, 820 N.E.2d 462, 468 (Ill. 2004)).

---

3-29-11